**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Luis SANCHEZ, Defendant–Appellant.**

**No. 91–1707.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1992.

Decided Jan. 12, 1993.

---

Michael Jude Quinley (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, IL, for plaintiff-appellee.

Cheryl I. Niro (argued), Oak Park, IL, for defendant-appellant.

Before WOOD, Jr.,* COFFEY, Circuit Judges, and CURRAN,** District Judge.

CURRAN, District Judge.

Luis Sanchez appeals from his judgment of conviction and sentence entered on March 22, 1991, by the Honorable William D. Stiehl of the United States District Court for the Southern District of Illinois. On January 17, 1991, a jury found Sanchez guilty of knowingly and intentionally possessing with intent to distribute a substance containing cocaine in violation of section 841(a)(1) of Title 21 of the United States Code and of knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of section 924(c)(1) of Title 18 of the United States Code. After denying Sanchez's post trial motions, Judge Stiehl sentenced him to 138 months of imprisonment. We affirm.

---

* Judge Wood, Jr., assumed senior status on January 16, 1992, which was after oral argument in this case.

** The Honorable Thomas J. Curran, District Judge for the Eastern District of Wisconsin, is sitting by designation.

## FACTS

On September 25, 1990, Luis Sanchez left his home in West Virginia carrying five pounds of cocaine in the trunk of his wife's car. He arrived in the Troy, Illinois area on September 26. When he stopped at a motel, he was observed by the Illinois State Police who had been told by an informant that Sanchez would be transporting cocaine. After the informant set up a buy with Sanchez during a taped telephone call, the two met at a truck stop parking lot, where their actions were videotaped. An agent of the Illinois State Police, posing as a customer, inspected a sample package of the cocaine, then gave the arrest signal. As he was being taken into custody, Sanchez complained that he was "only" getting $1,000 for this delivery.

One of the officers at the scene looked into the Sanchez car and saw a gun on the floor on the driver's side and a grocery bag on the back seat. He photographed these items. He then conducted an inventory search of the car and found that the gun was a .25 caliber Sterling semiautomatic pistol in an ankle holster. The gun was fully loaded with six rounds in the clip and one in the chamber. The grocery bag on the back seat of the car contained four, one-pound packages of cocaine.

At police headquarters, Sanchez allowed a written statement to be taken wherein he admitted making the delivery for a Columbian male from Florida. He said that he was to receive $2500.00 for the delivery. He refused to reveal the name of his supplier because he said that he feared for the safety of his family. Sanchez admitted that six years earlier he had made a delivery of cocaine to the informant.

At trial, the only witness presented for the defense was Sanchez's wife. She testified that the gun belonged to her and that she had put it under the front seat of the car so that her young daughter would not find it. In his closing argument, defense counsel conceded the drug charge and contested only the weapon charge. The jury did not believe the defense, so Sanchez was convicted.

At the sentencing hearing, Sanchez expressed dissatisfaction with his attorney, but the trial court found that he had been adequately represented. The defendant then argued that he should only be sentenced as a minor participant. This request—which could have resulted in a two point reduction in the base offense level—was rejected by the court. Requests for downward departures based on acceptance of responsibility and coercion were also rejected because Sanchez did not admit guilt on the gun charge and refused to identify his supplier.

## ISSUES

On appeal, Sanchez presents two issues for review:

1. Did the defendant receive ineffective assistance of counsel, that created such prejudice that he must be granted a new trial?

2. Whether the trial court erred in failing to find that the defendant was a minor participant for purposes of sentencing?

## ASSISTANCE OF COUNSEL

Just prior to the March 22, 1991, sentencing hearing, Sanchez filed a pro se motion to "terminate" the services of his appointed counsel. At the hearing Judge Stiehl inquired as to the reasons for his dissatisfaction and learned that Sanchez was unhappy because his wife's car had not been returned; because his counsel had successfully sought a continuance in order to listen to newly disclosed audio tapes, thereby delaying the trial; because he was not released on bond to spend the Christmas holidays with his family; because his counsel had not pursued the entrapment defense; and because his counsel failed to call Sanchez to testify on his own behalf or to call the informant and the informant's mother as witnesses.

The trial judge addressed every point raised by Sanchez and determined that the complaints concerning the car, the continuance, and the bond had no bearing on the trial. The judge concluded that the advice to forego the entrapment defense was

sound under the circumstances. He also accepted the explanation offered by Sanchez's attorney that the informant and his mother were not called to testify because the informant could have testified about a prior drug transaction with Sanchez. Finally, the judge observed that Sanchez had not indicated his desire to testify at trial and that not calling the defendant to testify was a strategic decision which defense counsel found reasonable under the circumstances.

On appeal, Sanchez reiterates some of these claims and raises others for the first time. Sanchez's appellate counsel contends that his trial counsel was constitutionally ineffective because of the cumulative prejudicial effect of errors including: trial counsel's failure to make an opening statement; trial counsel's failure to object to the seating of one of the officer-witnesses at counsel table; trial counsel's failure to cross examine three prosecution witnesses; and trial counsel's failure to call the informant and his mother as witnesses or to call Sanchez to testify about entrapment and coercion. Sanchez asserts that these deficiencies not only hurt him at trial, but also had an impact on his sentencing. He argues that, while none of these errors considered alone would violate his Sixth Amendment rights, he was denied effective assistance of counsel by the combined effect of these deficiencies. *See Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir.1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979).

■ Although this court does not generally address an ineffectiveness of counsel claim that has not been raised in the trial court, this court can examine such a claim if the appellant does not attempt to rely on extrinsic evidence and the issue can be determined from the district court record. *See United States v. Hubbard*, 929 F.2d 307, 311 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991) and *cert. denied sub. nom. Conrad v. United States*, —— U.S. ——, 112 S.Ct. 309, 116 L.Ed.2d 252 (1991); *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir.), *cert. denied sub nom. McDonnell v. United*

*States*, —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991). Because Sanchez does not attempt to rely on any extraneous matter, we will proceed to examine his Sixth Amendment claim.

■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that, to prevail on a claim of ineffective assistance of counsel, a defendant must establish: (1) that his attorney's performance was deficient, and (2) that, but for the attorney's deficient performance, the result would have been different. *Id.* at 684, 104 S.Ct. at 2062. The defendant bears the burden of proving both incompetence and prejudice. *Id.* at 687, 104 S.Ct. at 2064. Because we find that Sanchez was not prejudiced by the alleged errors of his trial counsel, we need not address whether trial counsel was incompetent. *See United States v. Mealy*, 851 F.2d 890, 908 (7th Cir.1988).

To meet the prejudice prong of the *Strickland* test, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Sanchez has not met this standard.

In this case the evidence against Sanchez was overwhelming—the audio tape of his telephone conversation with the informant; the videotape of his delivery of cocaine to the informant and the undercover agent; the photographs of the holstered gun and grocery bag of cocaine packets found in Sanchez's car; and, his own statement made after his arrest in which he admitted delivering cocaine for a fee. Faced with the weight of this evidence, Sanchez's trial counsel prudently conceded his client's guilt on the cocaine delivery count in his closing statement. Therefore, even if trial counsel had made an opening statement,

objected to the seating of the police officer at counsel table, or cross examined all of the government witnesses, it is highly unlikely that the jury would have acquitted Sanchez on the drug charge.

Sanchez did not concede guilt on the gun charge, but he has failed to meet his burden of showing how he was prejudiced by his counsel's handling of the issue. In support of Sanchez's claim that he did not know the gun was in the car, the defense called Mrs. Sanchez as a witness. Mrs. Sanchez testified that she had placed the holstered gun under the driver's seat of the car without her husband's knowledge so that her young daughter would not find the gun and injure herself. The jury rejected this improbable explanation and Sanchez does not show how any of his attorney's omissions, even when they are considered cumulatively, could have changed this outcome.

■■■ After being found guilty on both counts, Sanchez told the sentencing court that he had wanted to assert an entrapment defense. For a defendant to raise the entrapment defense, he must produce evidence of the government's inducement and of his own lack of predisposition. *United States v. Carrasco*, 887 F.2d 794, 814 (7th Cir.1989). The United States Supreme Court has described the criminal disposition element as "the principal element in the defense of entrapment." *United States v. Russell*, 411 U.S. 423, 433, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). The defendant has the burden of showing inducement, while the government has the burden of showing predisposition. *See United States v. Whoie*, 925 F.2d 1481, 1484 (D.C.Cir.1991) (Thomas, J., opinion). The entrapment analysis ends without inquiry into government inducement if the defendant was predisposed to commit the charged conduct. *See United States v. Blackman*, 950 F.2d 420, 422–23 (7th Cir. 1991). The factors relevant in determining whether a defendant was predisposed to commit a crime are:

(1) the character and reputation of the defendant, including any previous criminal record; (2) whether the suggestion of the criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for profit; (4) whether the defendant expressed reluctance to commit the offense which was overcome only by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion applied by the government. *United States v. Lazcano*, 881 F.2d 402, 406 (7th Cir.1989).

■■■ Sanchez's suggested entrapment defense founders on the first factor. Sanchez had a prior conviction for the theft of two pickup trucks. More importantly, after his arrest he admitted that he had delivered packets of cocaine to the informant on at least one occasion in the past. He also admitted to making the charged delivery for profit. According to Sanchez's statement, it was an Hispanic male from Florida, not the informant or any other government agent, who made the initial contact regarding the cocaine delivery and there is no evidence that Sanchez was a reluctant participant other than his claim that the informant and his mother harassed him with threatening phone calls. Sanchez contends that his trial attorney should have called him to testify about this alleged "coercion" and "entrapment" and that the attorney should also have called the informant and his mother to testify. The trial judge viewed these proposals as unwise under the circumstances and ruled that Sanchez's trial attorney was not ineffective for not raising an entrapment defense. We agree. Even if we were to credit Sanchez's testimony, it would not have been sufficient to overcome the positive evidence of Sanchez's predisposition to engage in drug trafficking. Based on this evidence, a rational jury could easily have found the requisite predisposition beyond a reasonable doubt. Therefore, because it is improbable that an entrapment defense would have succeeded, Sanchez suffered no prejudice because his counsel refused to raise this defense at trial.

■■■ Finally, appellate counsel contends that these cumulative "errors" hurt Sanchez at sentencing. Counsel contends that

Sanchez's base offense level could have been reduced by evidence of coercion even if the entrapment defense had not been successful. *See* United States Sentencing Commission, *Guidelines Manual,* § 5K2.12 (1990). The sentencing judge denied a two level reduction for coercion due to lack of any evidence except the defendant's statements. Sanchez believes that his claims of coercion would have been corroborated by testimony from the informant and his mother. However, in this court's estimate, it would have been highly unlikely that the informant or his mother would have admitted to threatening or harassing Sanchez had they been called to testify. Moreover, at sentencing the trial attorney explained that, if the proposed witnesses had been called, the informant and Sanchez could have been questioned on other areas which would have been highly prejudicial to the defense. Thus, it was a legitimate strategic choice not to call Sanchez or the informant or his mother to the stand.

■ Appellate counsel also believes that Sanchez could have received a reduction for acceptance of responsibility, if he had been properly advised by his trial counsel. *See* United States Sentencing Commission, *Guidelines Manual,* § 3E1.1. The sentencing court denied Sanchez's request for a reduction under section 3E1.1 of the Sentencing Guidelines because he did not accept responsibility for carrying the gun and did not name his cocaine supplier. Taking these stands were personal decisions of the defendant and can not be blamed on his attorney's trial tactics. Therefore, this last argument also fails.

■ In sum, Sanchez has not met his burden of showing that any alleged "errors" or deficiencies in the performance of his trial counsel resulted in any material prejudice to Sanchez at trial or during sentencing. Therefore, neither the conviction nor the sentence will be disturbed on the ground that trial counsel was ineffective.

## MITIGATING ROLE

The remaining issue on appeal is whether the trial court abused its discretion by not finding that Sanchez was merely a minor participant in the drug transaction. Sanchez takes the position that he was merely a courier and that he was entitled to a two-point reduction in his base offense level under Sentencing Guideline § 3B1.2, which provides that:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

United States Sentencing Commission, *Guidelines Manual,* § 3B1.2 (1990).

■ Sanchez's contention that the sentencing court incorrectly applied section 3B1.2 to the facts of his case presents a mixed question of law and fact for this reviewing court. Factual findings used to determine the appropriate sentencing range are reviewed under the clearly erroneous standard, while conclusions of law are reviewed *de novo.* A finding can be said to be clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Company,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The statute establishing appellate review of sentencing decisions under the Guidelines provides that the court of appeals "shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C.A. § 3742(e) (West Supp.1991).

■ In maintaining that he should have been entitled to a two-level decrease due to being a minor participant, Sanchez argues that he was merely a courier and that there was no evidence that he had a continuing relationship in the drug trade. The Commentary to Section 3B1.2 explains that:

*Application Notes:*

1. Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

2. It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to off-load part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.

3. For purposes of § 3B1.2(b) a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.

*Background:* This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case.

Sanchez tries to square his own situation with this commentary by citing a number of cases in which defendants were found to be minor participants in a conspiracy if they only played the role of courier. *See, e.g., United States v. Guerrero,* 894 F.2d 261, 264 (7th Cir.1990). However, in this case Sanchez was not charged with conspiracy. He was convicted on a charge of possessing with intent to distribute cocaine and of carrying a gun during the commission of this crime. Sanchez was the principal participant in both these crimes.

The evidence admitted at the *Sanchez* trial established that the defendant, acting alone, knowingly transported five pounds of cocaine across state lines; that he used and drove a family car; and that he was paid $2500 for the trip. He claimed to know the identity of his supplier and exhibited familiarity with drug dealing. In a written statement, Sanchez admitted having made a prior cocaine delivery to the informant. He was entrusted with collecting $77,000 from the informant-buyer in connection with the charged delivery; and, as the jury found, he carried a loaded gun to protect himself. Under these circumstances the sentencing court's denial of a reduction in Sanchez's base offense level on the ground that he was not a minor participant was not clearly erroneous or contrary to law. *See United States v. Laird,* 948 F.2d 444, 447 (8th Cir.1991).

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of conviction and sentence imposed by the district court.