**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Samuel E. GUNNING and Angela D. Gunning, Defendants–Appellants.**

**Nos. 92–2022, 92–2023.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1993.

Decided Feb. 8, 1993.

Rodger A. Heaton, Asst. U.S. Atty. (argued), Sherry K. Leckrone, Office of the United States Attorney, Springfield, IL, for U.S.

Monroe McWard (argued), Taylorville, IL, for Angela D. Gunning, defendant-appellant.

Jon G. Noll (argued), Springfield, IL, for Samuel E. Gunning, Jr., defendant-appellant.

Before EASTERBROOK and RIPPLE, Circuit Judges, and MILLER, District Judge.*

* Hon. Robert L. Miller, Jr. of the Northern Dis-

MILLER, District Judge.

Samuel Gunning and Angela Gunning appeal their convictions for conspiracy to possess with intent to distribute cocaine and carrying a firearm during and in relation to a drug trafficking crime. To avoid confusion between the Gunnings, who were married between their indictment and trial, this opinion refers to them as Sam and Angela. Both defendants contend that the indictment was not sufficient to charge the firearm offense, that the evidence does not support the conspiracy convictions, and that the evidence was insufficient as to the firearm count. Angela also challenges two of the district court's sentencing findings.

For the reasons that follow, we affirm the convictions and Angela's sentence.

## I. FACTS

In October 1991, Robert Utley was cooperating with investigations of his prior drug trafficking associates. On October 4, Mr. Utley called Sam, whom he had known since 1988, in an attempt to set up a drug transaction. Between October 11 and October 15, Mr. Utley and Sam had a number of telephonic discussions about the purchase from Mr. Utley of one-half kilogram of cocaine. Sam wanted Timmie and Tommie Eichen to buy the cocaine from Mr. Utley so Sam could buy some cocaine from the Eichens and later sell it. Sam told Mr. Utley that he had discussed the purchase of the half-kilogram of cocaine with the Eichens, but Sam was unsure whether the Eichens could get the money. Sam and Mr. Utley discussed both quantity and price.

During one telephone conversation with Sam, Mr. Utley heard noises in the background. Sam stated that Angela was fixing supper. Sam and the Eichens discussed the cocaine purchase at Sam's and Angela's house; Angela was present in the same room during these discussions. Sam once asked Angela to find Mr. Utley's phone number.

Sam told the Eichens that if they did not buy the cocaine, he would buy it and then

trict of Indiana, sitting by designation.

sell it to the Eichens at a higher price. He told the Eichens that he wanted only two ounces, but that Mr. Utley would not break the half-kilogram into smaller quantities. Sam and the Eichens then agreed to offer Mr. Utley $10,000.00 for half a kilogram of cocaine, and a meeting was established. Sam told Mr. Utley that he wanted two and one-half ounces of the half-kilogram to be packaged separately for him; the Eichens planned to give the two and one-half ounces of cocaine to Sam for arranging the deal with Mr. Utley. Tommie Eichen also discussed the transaction's details over the telephone with Mr. Utley, and confirmed the sale of half a kilogram of cocaine for $10,000.00, with two and one-half ounces to be packaged separately for Sam.

On the day of the drug deal, the Eichens met with Sam at Angela's and Sam's house and discussed the drug deal in Sam's kitchen for twenty minutes. When Sam asked the Eichens if they would be carrying guns, Tommie Eichen asked Sam whether he would be carrying a gun; Sam said he would. Sam told the Eichens to bring a gun in case Mr. Utley tried to rob them or something went wrong with the deal. The Eichens agreed to carry a gun. If Mr. Utley tried to rob them, they were to show Mr. Utley the gun, take their cash, and run.

They also discussed Sam's role in the plan: Sam was to follow the Eichens to a Holiday Inn (the site of the drug transaction) and act as surveillance. Angela was present the entire time the details of the transaction were being discussed in the kitchen.

Later that day, the Eichens met with Sam and Angela at Sam's house, where some people were to wait for Sam to return with the cocaine. Sam intended to sell a portion of his two and one-half ounces to them.

Sam and Angela followed the Eichens toward the Holiday Inn in Angela's car. The Gunnings drove to the gas station across the street from the Holiday Inn. The plan called for Sam or the Eichens to flash their headlights if something went wrong with the deal; they were to meet after the drug transaction to give Sam the separate package containing his two and one-half ounces of cocaine.

The Eichens parked next to Mr. Utley's vehicle at the Holiday Inn, entered the Utley car, and gave Mr. Utley the cash. The Eichens and Mr. Utley then went to the trunk of Mr. Utley's car. When Mr. Utley opened the trunk and pulled out the sack of cocaine, law enforcement agents arrived, arrested the Eichens, and took custody of the cocaine. The cocaine was in two packages, one weighing 68.8 grams (approximately two and one-half ounces) and one weighing 434.8 grams.

While the Eichens met with Mr. Utley, Sam and Angela were parked between two semi-trailers at a gas station across the street, unable to see the activities taking place in the Holiday Inn parking lot. A state trooper arrested them in the gas station parking lot. Sam got out of the vehicle immediately, but Angela held onto her purse and would not exit the car. After she eventually got out of the car and was informed of her constitutional rights, she told the trooper that a gun was in her purse. The trooper found the gun in a bag inside Angela's purse along with a loaded magazine clip.

Sam, Angela, and the Eichens were charged with conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(6) and 846 (Count I), and carrying or aiding and abetting the carrying of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 2 and 924(c) (Count II).

The Eichens pleaded guilty and cooperated with the government by testifying at the Gunnings' trial. Neither Sam nor Angela testified at trial, but portions of Angela's testimony at Sam's pretrial detention hearing were admitted into evidence. In that prior testimony, Angela said she knew the Eichens were going to the Holiday Inn to meet someone, but she and Sam were just going for a ride. Angela testified that she knew that she had a gun and ammunition in her purse, and that she had been told to put the gun, which was registered to Tommie Eichen, in her purse. The jury re-

turned a verdict of guilty on both counts as to Sam and Angela.

The district court sentenced Sam to eighty-six months on Count I and sixty months on Count II, to be served consecutively. The district court sentenced Angela to eighty-four months on Count I and sixty months on Count II, to be served consecutively. Both defendants filed a timely notice of appeal.

## II. THE CONSPIRACY CHARGE

Both Gunnings contend that the evidence was insufficient to establish that they were members of a conspiracy. Arguments based on sufficiency of the evidence face a heavy burden. The conviction must be affirmed if any rational trier of fact could have found the Gunnings guilty of the crime after viewing all the evidence in the light most favorable to the government. *United States v. Burrell*, 963 F.2d 976, 987 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 357, 121 L.Ed.2d 270 (1992).

### A. Single Conspiracy

■ A conspiracy is an agreement to commit a crime. *United States v. Aquilla*, 976 F.2d 1044, 1050 (7th Cir.1992). A conspiracy consists of a combination or confederation between two or more persons formed for the purpose of committing, by their joint efforts, a criminal act. *United States v. Curry*, 977 F.2d 1042, 1053 (7th Cir.1992). To prove the charged conspiracy under 21 U.S.C. § 846, the government was required to show that each defendant knew of the illegal objective of the conspiracy alleged in the indictment, and agreed to participate in its achievement. *United States v. Burrell*, 963 F.2d at 987. In deciding the sufficiency of the evidence of the conspiracy alleged in the indictment, this court ultimately must determine whether the evidence would allow a reasonable jury to infer a single agreement among the defendants. *United States v. Aquilla*, 976 F.2d at 1050.

■ The Gunnings contend that the evidence established two separate conspiracies: one involving the Eichens to purchase a half-kilogram of cocaine; and another

conspiracy involving the Gunnings' purchase of two and one-half ounces of cocaine. Sam argues that because he never said he would purchase more than two and one-half ounces of cocaine, there was no common goal among the conspirators to possess more than 500 grams. The court disagrees.

The government presented more than sufficient evidence to allow a reasonable juror to conclude that the Gunnings conspired with the Eichens to possess more than 500 grams of cocaine with the intent to distribute. Sam wanted but a few ounces, but he had to broker a half-kilogram deal to obtain that. He discussed a half-kilogram deal with Mr. Utley several times in the week before the deal, and told Mr. Utley he was discussing it with the Eichens. Indeed, the evidence indicates he did more than discuss; he cajoled the Eichens by telling them that he would buy it if they didn't, and the Eichens then would have to pay a higher price. He explained to the Eichens his wish for the smaller quantity, and that Mr. Utley would sell no less than a half-kilogram.

On the day of the transaction, Sam met with the Eichens, helped plan the participants' roles, and told the Eichens to take a gun in case the deal went sour. Sam followed the Eichens to the Holiday Inn, where he and the Eichens expected the Eichens to buy a half-kilogram of cocaine, of which Sam would receive a part.

This evidence demonstrates an agreement toward a common goal, not multiple agreements constituting ends unto themselves. *See United States v. Paiz*, 905 F.2d 1014, 1020 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991). The government presented evidence from which the jury could find a single conspiracy.

### B. Sufficiency of Evidence of Defendants as Conspirators

■ Sam notes that the testimony against him was presented by the Eichens and Mr. Utley—drug dealers and convicted felons. All testified in furtherance of de-

sired downward departures at sentencing. Sam argues that allowing a conviction to stand on the basis of testimony of such people derogates the system. Their testimony was not, however, unbelievable on its face; accordingly, such arguments are for the trier of fact and not a reviewing court. *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir.1992).

■ Further, Sam's argument ignores that he and Angela were arrested very near the site of the Holiday Inn. Presence alone is not sufficient to prove conspiracy, *United States v. Burrell*, 963 F.2d at 988, but Sam's presence corroborates the testimony of the Eichens and Mr. Utley. It is true, as Sam argues, that he was not parked in a position to see the transaction, as the Eichens say he was to do; the government sought to counter this argument at trial by presenting testimony explaining counter-surveillance, in which one watches for others watching. This court need not determine whether Sam's chosen parking spot was a clever site for counter-surveillance or merely a botched try at surveillance; the government was not required to prove that Sam performed his assigned task well. It is enough that the evidence allowed the jury to find that Sam went to the Holiday Inn area to play a role in the conspiracy of which he was a part.

■ Sam also suggests that he could not be a conspirator because he was a mere buyer, and evidence of a mere buyer-seller relationship is not sufficient to establish a conspiracy conviction. *United States v. Haddad*, 976 F.2d 1088, 1092 (7th Cir.1992). Although Sam intended to buy, his role greatly exceeded that of a buyer: he intended to distribute what he was going to buy; he brokered the larger sale to provide his seller with inventory. His participation involved far more than the simple exchange of money for drugs intended for personal use. *United States v. Aquilla*, 976 F.2d at 1051.

■ The evidence of Angela's participation, although weaker than the evidence as to Sam, likewise was sufficient to support her conviction. The record contains no evidence from which Angela's agreement or participation could be inferred until shortly before the transaction. Before that time, the government's proof showed only her presence while Sam discussed the transaction with others, but that presence supports an inference of her knowledge of what Sam was doing. Armed with that knowledge, and with a handgun, Angela then travelled, with Sam at the wheel of her car, to the scene of the transaction. The jury could have found that Sam told the Eichens he would have a gun. No gun was found on his person; Angela's presence with possession of a gun supports an inference that Angela had thrown her lot with Sam. Angela's involvement exceeded mere presence, *United States v. Brigham*, 977 F.2d 317, 319 (7th Cir.1992), and greatly exceeded simple knowledge of Sam's activities, making this a different case from *United States v. Williams*, 798 F.2d 1024, 1027–29 (7th Cir.1986). The jury could have found that Angela knew of the conspiracy and intentionally joined and associated herself with its criminal purpose. *United States v. Villasenor*, 977 F.2d 331, 335 (7th Cir.1992).

A reasonable jury could have found that both Angela and Sam knowingly joined the conspiracy charged in the indictment. The evidence on the conspiracy count was sufficient.

## III. THE GUN CHARGE

Sam and Angela each contend that the indictment was insufficient to charge them with, and the evidence insufficient to convict them of, carrying a firearm within the meaning of 18 U.S.C. §§ 2 and 924(c). Section 924(c)(1) provides in part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.

18 U.S.C. § 924(c)(1).

### A. Sufficiency of the Indictment

■ Count I of the indictment alleged in part that, "On October 18, 1991, defendant

Tommie Eichen was found to be carrying one .380 ammunition cartridge in his pocket, defendant Timmie Eichen was found to be carrying a loaded Colt .380 semi-automatic pistol in his front waistband." Count II charged that all four conspirators "knowingly carried a firearm during and in relation to a drug trafficking crime being Count 1 above." The district court instructed the jury that:

> In determining whether the Defendant used or carried a firearm, you may consider all of the factors received in evidence in the case including the nature of the underlying drug trafficking crime charged, the proximity of the Defendant to the firearm, the usefulness of the firearm to the crime charged, and the circumstances surrounding the presence of the firearm.

The Gunnings contend that because the only gun mentioned in the indictment was in Timmie Eichen's possession, and because the Gunnings were not in a position to exercise control over that firearm, it was plain error for the court to allow evidence of the gun found in Angela's purse, and that the district court impermissibly broadened the indictment.

The government contends that the indictment was not amended because Count II charged that the Gunnings knowingly carried a "firearm" during and in relation to a drug trafficking crime, and the use of the term "firearm" in Count II is not limited to the gun mentioned in Count I and found in Timmie Eichen's possession. Both the Gunnings and the government agree that the appropriate standard for review of this issue is plain error: a mistake so serious that but for it the Gunnings probably would have been acquitted. *United States v. Leichtnam,* 948 F.2d 370, 375 (7th Cir. 1991).

The Fifth Amendment to the Constitution provides, in part, that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." It is the grand jury's exclusive prerogative finally to determine the charges; once it has done so neither a prosecutor nor a judge can change the charging part of the indictment. *United States v. Leichtnam,* 948 F.2d at 375–76. A constructive amendment of an indictment occurs:

> where a "complex set of facts" is presented to the jury during the trial which is distinctly different from the set of facts set forth in the charging instrument ... [or] the crime charged in the indictment must be "materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually proved."

*United States v. Mosley,* 786 F.2d 1330, 1335 (7th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986).

The Gunnings cite *United States v. Leichtnam,* 948 F.2d 370, to support their theory that the indictment was amended. In *Leichtnam,* the defendant was indicted for having knowingly used or carried a rifle specifically identified in the firearm charge, but the jury was shown three guns and was told that it could convict the defendant if convinced that he had used "a firearm". The court held that the introduction of the two handguns in addition to the rifle identified in the indictment, combined with the jury instructions, allowed the jury to convict the defendant for having carried or used a firearm other than the rifle specified in the indictment. Thus, the jury may have convicted the defendant on charges that the grand jury never made against him.

The *Leichtnam* court noted, however, that "the government could easily have drawn up [the defendant's] indictment to charge him simply with having used or carried a 'firearm'." 948 F.2d at 379. The indictment against the Gunnings was so drawn. The defendants were alleged to have carried a "firearm", not the Colt pistol found on Timmie Eichen's waist or the Llama pistol found in Angela's purse. There were two firearms. Neither the indictment nor the jury instructions limited the evidence to a particular firearm.

The indictment was drawn in accordance with *Leichtnam,* and was neither broadened nor impermissibly amended.

### B. Sufficiency of Evidence on the Gun Charge

The court must consider the evidence in the light most favorable to the government; the verdict will not be overturned unless no rational juror could find that each essential element was proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Muehlbauer,* 892 F.2d 664, 666–67 (1990). To support a conviction under 18 U.S.C. § 924(c), the government must prove that (1) the defendant used or carried the firearm, and (2) this use or carrying of the firearm must have been during and in relation to a crime of violence or drug trafficking offense. *United States v. Edun,* 890 F.2d 983, 986 (7th Cir.1989).

The Gunnings contend that because their car was located in an area where they could not observe the drug transaction, they could not have used the gun to facilitate the drug transaction. They claim the gun was in Angela's purse merely to protect them while they were on the road.

Sam and Angela cite several cases for the proposition that mere possession of a firearm is insufficient for conviction under § 924(c). *United States v. Matthews,* 942 F.2d 779, 783–784 (10th Cir.1991) (firearms found in living room); *United States v. Bruce,* 939 F.2d 1053, 1054–1056 (D.C.Cir. 1991) ("small derringer hidden in a belt buckle stored in a paper bag alongside drugs in the pocket of a raincoat hanging in a closet"); *United States v. Lyman,* 892 F.2d 751, 752 (8th Cir.1989), *cert. denied,* 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990) (pistol in bag in kitchen cabinet); *United States v. Feliz–Cordero,* 859 F.2d 250, 253–254 (2nd Cir.1988) (pistol found in dresser drawer). Each of those cases, however, considered whether a firearm not carried by a defendant was "used" in relation to the drug offense, a point not relevant to the case against Sam and Angela, who were charged with "carrying" a firearm.

Angela plainly "carried" the firearm that was found in her purse. The cases she cites establish that one "carries" a firearm within the meaning of § 924(c) when the firearm is within her reach during commission of the drug offense. *United States v. Feliz–Cordero,* 859 F.2d at 253; *accord, United States v. Bruce,* 939 F.2d at 1056. Sam, too, "carried" a firearm through the operation of 18 U.S.C. § 2. Timmie Eichen testified that he carried a firearm in the waistband of his trousers during the transaction because Sam told him to do so. One who counsels or commands another to commit a crime, and knowingly and actively contributes toward its success, is guilty of that crime under 18 U.S.C. § 2. *United States v. Reiswitz,* 941 F.2d 488, 494 (7th Cir.1991), *cert. denied,* ——— U.S. ———, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992).

The government also was required to prove that the firearms were carried "during and in relation to" the drug offense. To meet this burden, the government was required to demonstrate a relation or connection between the transaction and the possession of the firearm. *United States v. Villarreal,* 977 F.2d 1077, 1079 (7th Cir. 1992). The evidence presented at trial easily suffices to meet this standard. The jury was entitled to find that Sam told the Eichens to take a gun in case Mr. Utley tried anything that would undercut the deal; the jury was entitled to believe the Eichens were armed in furtherance of that instruction. The jury also could find that Angela was present during the conversation and was aware of Sam's stated preference for being armed during the transaction, and that she carried the handgun for that purpose.

There was sufficient evidence to prove that the Gunnings violated 18 U.S.C. § 924(c).

### IV. ANGELA'S SENTENCING

Angela contends that the district erred in refusing to reduce her offense level for her role in the offense and in increasing her offense level for obstruction of justice.

### A. Role in the Offense

U.S.S.G. § 3B1.2 provides a range of adjustments for a defendant whose role in the offense of conviction makes her substantially less culpable than the average participant. Under the version of the guidelines applicable in 1991 and 1992, a four-level reduction in offense level is given to a "minimal" participant, a two-level reduction for a "minor" participant, and a three-level reduction for those falling in between. U.S.S.G. § 3B1.2. Any determination under § 3B1.2 is heavily dependent upon the facts of the case. *United States v. Bigelow*, 914 F.2d 966, 975 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991).

The downward adjustment for a minimal participant should be given infrequently. *United States v. Scroggins*, 939 F.2d 416, 423–424 (7th Cir.1991). A defendant's lack of knowledge or understanding of the scope and structure of the enterprise and activities of others is indicative of a role of minimal participant. U.S.S.G. § 3B1.2, Application Note 1; *United States v. Scroggins*, 939 F.2d at 424. To merit a reduction as a minor participant, Angela had to show that she was "substantially less culpable" than the average defendant. *United States v. Navarez*, 954 F.2d 1375, 1382 (7th Cir.1992). The adjustment for either a minimal or minor participant requires the court to focus on the defendant's role in the offense, rather than unspecified conduct not part of the offense. *United States v. Valencia*, 907 F.2d 671, 687 (7th Cir.1990).

Angela maintains that her role was either minimal or minor because she was "substantially less culpable than the average defendant." She notes the absence of evidence that she participated in any of the planning, or talked on the phone to anyone, or was present at the "live" discussions for any reason other than her residence in the house.

We review the district court's findings under U.S.S.G. § 3B1.2 under the clearly erroneous standard. *United States v. Gutierrez, et al.*, 978 F.2d 1463, 1471 (7th Cir.1992); *United States v. Scroggins*, 939 F.2d at 416. A finding of fact is clearly erroneous only if, after reviewing the entire evidence, the court is left with the definite and firm conviction that a mistake has been made. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989). If there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. at 574, 105 S.Ct. at 1511; *United States v. Brick*, 905 F.2d 1092, 1095 (7th Cir.1990).

The record before the sentencing court was not limited to the evidence presented at trial. Sam had provided the government with an immunized pretrial proffer that was submitted at Angela's sentencing. In the proffer, Sam said that he told Angela on the day of the transaction that he was going to assist the Eichens in buying cocaine, and that Angela had agreed to join him. He also said that Angela was fully aware that he placed a weapon in her purse before they left their residence.

The district court found that Angela had lied to the magistrate during Sam's detention hearing when she testified that she did not know where she and Sam were going in her car and that she knew nothing about the drug deal. The district court also found that Angela was more than a minimal or minor participant because the jury found that she was guilty of the conspiracy, and because Sam's proffer indicated that she knew about the drug transaction, accompanied Sam for surveillance, and carried a gun and loaded magazine clip in her purse. As Angela acknowledges, the extent of her knowledge and participation comes down to a swearing contest between Angela and Sam. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. at 574, 105 S.Ct. at 1511; *United States v. Brick*, 905 F.2d at 1095.

The district court determined that Angela had knowledge of the cocaine purchase; that she was present during discussions

about the drug transaction; and that she knowingly went to the drug transaction with a .45 semi-automatic pistol and ammunition in her purse. It is true that unlike Sam, Angela did not plan the transaction, and unlike the Eichens, she did not take possession of the cocaine. Nonetheless, she brought a firearm to the scene and, like the defendant denied a reduction for his role in the offense in *United States v. Johnson*, 965 F.2d 460, 468–469 (7th Cir. 1992), attended in full knowledge of the conspirators' plans. Under these circumstances, the district court's finding that she was not less culpable than the other participants was not clearly erroneous.

### B. Obstruction of Justice

■■■■ Under the version of the sentencing guidelines in effect in 1991 and 1992, § 3C1.1 provided for a two-level enhancement of the offense level if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing" of the offense of conviction. The district court concluded that Angela had provided materially false information to the magistrate judge when she testified at Sam's detention hearing. At that hearing, Angela swore that she did not know that a drug deal was occurring, and that she had not been told where she and Sam were going in her car on the evening of the offense. Based on Sam's pretrial proffer to the prosecution, the district court concluded that Angela had lied.

Angela argues that her statements under oath at Sam's detention hearing, even if false, did not impede the investigation, were not material, and were merely a denial of guilt. A district court's determination that an obstruction of justice enhancement was warranted will only be disturbed if clear error is shown. *United States v. Jackson*, 935 F.2d 832, 849 (7th Cir.1991). Based upon Sam's proffer and the jury's verdict, no clear error is present.

Angela claims that the statements, if false, were not material because they did not tend to influence or affect the issue of whether Sam should be detained. She claims that her testimony went only to her role in the crime, and had nothing to do with whether Sam should be detained.

"Material" is defined as "evidence, fact, statement or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, Application Note 5. Many factors are taken into account in a detention hearing, including the nature of the circumstances of the offense charged, 18 U.S.C. § 3142(g)(1), and the weight of the evidence against the accused. 18 U.S.C. § 3142(g)(2). Angela's false testimony could have affected or influenced the magistrate judge's decision. For example, Angela did not testify to the real purpose of the Gunnings' presence at the scene, that being surveillance or counter-surveillance. Instead, she testified that they went to the gas station to buy cigarettes, and were parked in back of the gas station for some unknown reason. This false statement could have influenced the magistrate judge's determination with respect to Sam's detention. The district court's determination that Angela's false statements were material was not clearly erroneous.

■■■■ Angela also maintains that she did not obstruct justice, but merely denied her guilt. To support her position, she cites *United States v. Fiala*, 929 F.2d 285, 289–90 (7th Cir.1991), in which the defendant's denial of guilt was in response to questioning by a police officer. 929 F.2d at 286, 290. Angela, however, falsely testified under oath at a detention hearing. *See, e.g., United States v. Barnett*, 939 F.2d 405, 408 (7th Cir.1991) (defendant who provides false testimony at a suppression hearing can receive obstruction of justice enhancement). Angela's argument offers no basis for distinction between sworn testimony at a detention hearing and a false "denial of guilt" at one's own trial, which constitutes grounds for enhancement under U.S.S.G. § 3C1.1. *See, e.g., United States v. Easley*, 977 F.2d 283, 286–287 (7th Cir.1992).

The district court did not err in enhancing Angela's offense level for obstruction of justice.

## V. CONCLUSION

The indictment properly set forth the offenses with which the defendants were charged; the evidence was sufficient to support the findings of guilt; and the district court committed no sentencing errors. Accordingly, the judgments of the district court are AFFIRMED.