UNITED STATES of America,
Plaintiff–Appellee,

v.

William MOORE, Defendant–Appellant.

No. 92–2730.

United States Court of Appeals,
Seventh Circuit.

Argued March 2, 1993.
Decided April 14, 1993.

Christopher Cook (argued), Office of U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Crim. Re-

ceiving, Appellate Div., Chicago, IL, for plaintiff-appellee U.S.

Frank Wesolowski (argued), Oak Brook, IL, for defendant-appellant Moore.

Before RIPPLE, KANNE and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

William Moore pleaded guilty to one count of conspiracy to embezzle funds from the Illinois Department of Public Aid in violation of 18 U.S.C. § 371, and was sentenced under the Sentencing Guidelines to twelve months imprisonment followed by two years of supervised release. Moore appeals his sentence on two grounds: (1) the two-level enhancement of his base offense level under U.S.S.G. § 2B1.1(b)(5) for "more than minimal planning" was clearly erroneous, and (2) the absence of a two- or four-level reduction of his base offense level under U.S.S.G. § 3B1.2 for "minor" or "minimal" participation constituted plain error. We affirm.

## I.

On June 20, 1991, a federal grand jury returned an eighteen-count indictment charging William Moore and twelve others with conspiring to convert money of the United States by collecting public assistance payments to which they were not entitled. Moore was charged in Count One of the indictment with conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, and in Count Eighteen with embezzlement of public funds in violation of 18 U.S.C. §§ 2 and 641.

On March 10, 1992, Moore entered into a written plea agreement in which he agreed to plead guilty to Count One of the indictment in exchange for the government's dismissal of Count Eighteen. As part of the agreement, Moore stipulated to the following facts regarding his offense:

From December 27, 1988 until April 4, 1989, Moore participated in a conspiracy to cause the Illinois Department of Public Aid to issue benefits to nonexistent

families under the Aid to Families with Dependent Children ("AFDC") and the Food Stamp Programs, both of which operate with federal funds. The conspiracy in which Moore participated was organized by co-conspirator Reginald Doss and spanned seven years. Moore's active participation in the conspiracy lasted four months.

From August 1983 to August 1990, Reginald Doss operated a scheme whereby he regularly obtained blank birth certificates from Robert Hoskins, an employee with the Chicago City Department of Vital Statistics. With the help of Kenneth Williams, Doss completed these forms by typing in fictitious names and information. Either Doss or Williams would then sign as the doctor certifying the birthplace. They would also sign any other required signatures on these birth certificates. When the birth certificates were completed, Doss would notify Robert Hoskins by beeper or by telephone, before delivering the certificates to Hoskins for certification. Hoskins would officially certify each fraudulent certificate with the seal of the City of Chicago. Doss, Karen Thompson, and Kenneth Williams picked up the certified birth certificates from Hoskins.

Doss used groups of sealed birth certificates to invent entire families, which usually consisted of a mother, a single child, and a set of twins. Sometimes he would use these birth certificates to get Social Security cards. Doss would give the information from the birth certificates to female and male acquaintances, including defendant William Moore. The female co-conspirators would then falsely represent themselves as the mothers named on the birth certificates and would apply for and collect public aid under these assumed identities.

In December 1988, Reginald Doss gave defendant William Moore a set of birth certificates for a fictitious adult named Beverly Austin and two fictitious children named Pamela Austin and Brenda Austin. Defendant William Moore gave these birth certificates to a woman known as "Punkin." Moore instructed "Punkin" to go to the Social Security office and to use the birth certificates to obtain social security cards for herself and for each of the fictitious children.

On or about December 27, 1988, Moore directed "Punkin" to go to an Illinois Department of Public Aid ("IDPA") office to apply for public aid using the fraudulent birth certificates and the fraudulently obtained social security cards. Moore told "Punkin" to list his home address, 5955 South Marshfield, Chicago, on the application. After "Punkin" applied, defendant Moore received correspondence at 5955 S. Marshfield directing Beverly Austin to pick up her check and public aid food stamps at a currency exchange located in the vicinity of 59th and Ashland.

In February, March, and April of 1989, "Punkin" received public aid checks and food stamps in the name of Beverly Austin at the 59th and Ashland currency exchange. In each instance, defendant Moore received the food stamps, and "Punkin" kept the cash from the public aid checks. As a result of their fraudulent activities, Moore and "Punkin" received $1,094 in income maintenance benefits and $670 in food stamps on behalf of Beverly Austin and her two fictitious children.

During his period of participation in the conspiracy, Moore was aware that other individuals were fraudulently collecting public aid at the direction of Reginald Doss.

On June 23, 1992, the district judge held a sentencing hearing during which Moore made two objections to the presentence report. First, Moore objected to the computation of his criminal history score which resulted in a criminal history category of VI. The district judge sustained the objection in part, but still found that Moore's criminal history category was VI. Second, Moore objected to a two-level increase in his base offense level for "more than minimal planning." He acknowledged that he stipulated to the increase in the plea agreement, but argued that he had changed his position. His objection was overruled.

The district judge next imposed sentence pursuant to the calculations contained in the presentence report. Beginning with a base offense level of four points, § 2B1.1(a), the judge added two points after finding that the offense involved a loss of $1,764 or "more than 1,000," § 2B1.1(b)(1)(C), and another two points on finding that the offense involved "more than minimal planning," § 2B1.1(b)(5). Subtracting two points for acceptance of responsibility, § 3E1.1, resulted in a total offense level of six which, when combined with a criminal history category of VI, yielded a sentencing range of twelve to eighteen months. The district judge gave Moore twelve months, the lowest sentence in the range. This appeal followed.

## II.

■ Moore argues that the district judge's two-level enhancement under § 2B1.1(b)(5) was clearly erroneous. We review a finding of "more than minimal planning" for clear error, and reverse it only if we are left "with a definite and firm conviction that a mistake has been committed." *United States v. Lennick*, 917 F.2d 974, 979 (7th Cir.1990) (quoting *United States v. White*, 903 F.2d 457, 465 (7th Cir.1990)). A district judge may rely on the stipulated facts in a plea agreement in making this finding. *See United States v. Bos*, 917 F.2d 1178, 1180–81 & n. 1 (9th Cir.1990); *see also United States v. Isirov*, 986 F.2d 183, 186 (7th Cir.1993) (quoting U.S.S.G. § 6B1.4).

■ The Sentencing Guidelines define "more than minimal planning" to mean

more planning than is typical for commission of the offense in a simple form. 'More than minimal planning' also exists if significant affirmative steps were taken to conceal the offense.... 'More than minimal planning' is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment

will apply especially frequently in property offenses.

....

In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

U.S.S.G. § 1B1.1, Application Note 1(f). The Guidelines indicate that three distinct categories of offenses warrant the enhancement: those involving (1) more than typical planning, (2) significant steps to conceal, and (3) repeated acts. *United States v. Doherty*, 969 F.2d 425, 430 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992); *United States v. Maciaga*, 965 F.2d 404, 406 (7th Cir. 1992). Moore's offense fell squarely into the first and third categories, and consequently rose to the level of "more than minimal planning" under § 2B1.1(b)(5).

The stipulated facts show that Moore engaged in advance planning. Under Moore's direction, a female confederate took forged birth certificates to the Social Security office and obtained social security cards for herself under the name "Beverly Austin" and for each of two fictitious Austin children. Moore then directed this same woman to apply for public aid at an Illinois Department of Public Aid office, using the false birth certificates and social security cards, but indicating a residence at Moore's home address. Only after this preparation did Moore and his confederate begin to profit from their scheme by picking up AFDC checks and food stamps at a local currency exchange during the months of February, March and April 1989.

The stipulated facts also show that Moore committed repeated and interrelated acts over a period of time, and that each act was not "purely opportune."[1] Moore

---

1. U.S.S.G. § 1B1.1, Application Note 1(f); *see Maciaga*, 965 F.2d at 407 ("We have discovered no cases where 'more than minimal planning'

was applied to fewer than three repeated acts. In addition, when repeated acts were found, the acts were interrelated.").

fraudulently collected welfare benefits on three occasions, at the same location, over a four-month period of time.

Moore's arguments against application of the enhancement fail to demonstrate that the district judge was clearly erroneous in finding "more than minimal planning." First, the fact that Moore used his real address, arguing lack of concealment, is outweighed by facts showing premeditated and repeated criminal activity. Second, the fact that Moore's participation in the offense was short-lived does not establish a lack of "more than minimal planning." *See, e.g., United States v. DeFelippis,* 950 F.2d 444, 446 (7th Cir.1991) (upholding repeated acts over several weeks). Third, the fact that others obtained the false social security cards and were involved before Moore is "directed to the nature of [Moore's] role in the offense, rather than the nature of the offense itself, which is the focus of the 'more than minimal planning' language." *United States v. Earles,* 955 F.2d 1175, 1180 (8th Cir.1992) (quoting *United States v. West,* 942 F.2d 528, 531 (8th Cir.1991)). Moore stipulated in his plea agreement that he knowingly participated in a conspiracy to embezzle public funds from December 1988 to April 1989. Consequently, he is responsible for the acts of his co-conspirators taken in furtherance of that conspiracy for the purposes of applying the enhancement under § 2B1.1(b)(5). *See United States v. Wilson,* 955 F.2d 547, 551 (8th Cir.1992). Fourth, the fact that Moore had no control over "Punkin" is contradicted by Moore's stipulation that "Punkin" acted under his direction. The district judge found that Moore did exercise control over "Punkin," and we defer to this finding. *See Lennick,* 917 F.2d at 979. Fifth, and finally, the fact that the government mistakenly assessed Moore's criminal history category to be IV instead of VI does not constitute error given the parties' stipulation that the calculations in the plea agreement were preliminary in nature and subject to revision by the court. *See Schetz v. United States,*

901 F.2d 85, 86 & n. 3 (7th Cir.1990). Moore produced no evidence of any understanding to the contrary. *See Isirov,* 986 F.2d at 185.

## III.

Moore also argues that the district judge's failure to consider any reduction under § 3B1.2 for having a minimal or minor role in the offense constituted plain error.[2] The "plain error" standard applies because Moore failed to raise this issue at his sentencing hearing. *United States v. Cooper,* 942 F.2d 1200, 1206 (7th Cir.1991) (citing *White,* 903 F.2d at 466–67), *cert. denied,* — U.S. —, 112 S.Ct. 1303, 117 L.Ed.2d 524 (1992). Under this standard, we reverse only if we are "convinced that it is necessary in order to avert an actual miscarriage of justice." *United States v. Atkinson,* 979 F.2d 1219, 1224 (7th Cir. 1992) (quoting *United States v. Requarth,* 847 F.2d 1249, 1254 (7th Cir.1988)).

The Sentencing Guidelines provide that a four-level reduction for playing a minimal role in a crime is available for "defendants who are plainly the least culpable" participants, and is to be given "infrequently." U.S.S.G. § 3B1.2(a), Application Notes 1 & 2; *United States v. Gunning,* 984 F.2d 1476, 1484 (7th Cir.1993); *United States v. Sanchez,* 984 F.2d 769, 774–75 (7th Cir.1993). "[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2(a), Application Note 1; *Sanchez,* 984 F.2d at 775; *see Gunning,* 984 F.2d at 1484. The Guidelines further provide that a two-level reduction for playing a minor role in a crime applies to "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), Application Note 3; *Sanchez,* 984 F.2d at 775; *see Gunning,* 984 F.2d at 1484.

---

**2.** Contrary to Moore's suggestion in his brief, the district judge had no duty to determine *sua sponte* whether a reduction was appropriate un-

der § 3B1.2. *United States v. Headley,* 923 F.2d 1079, 1083 (3d Cir.1991).

**414**

The stipulated facts show that Moore was no "minor" or "minimal" participant. He knew about the conspiracy and its activities, and was an integral part of it. Moore knowingly received forged birth certificates for a fictitious family, instructed a female confederate to obtain false social security cards for this family and to apply for public aid on its behalf using the fake identification and his own home address, and collected a total of $1,764 in profits for himself and for his confederate in the course of three separate transactions.

Moore's arguments for application of the reduction fail to demonstrate that the district judge committed "plain error" by not considering it. The fact that Moore made less profits than his co-conspirators does not diminish the importance of his role in the offense. *See United States v. Hagan*, 913 F.2d 1278, 1283 n. 5 (7th Cir.1990) ("The importance of an individual's role in a drug offense should not be based solely on the amount of that individual's pecuniary gain.") (quoting *United States v. Brick*, 905 F.2d 1092, 1095 (7th Cir.1990)). Nor is Moore's role diminished by the fact that his participation in the conspiracy was short-lived, or that his confederate was the one who went to the currency exchange and kept the cash from the AFDC checks. Lastly, the fact that Moore was "among the two or three least guilty" of all the defendants does not mean he played a "minor" or "minimal" role in the conspiracy. *United States v. Miller*, 891 F.2d 1265, 1271 (7th Cir.1989).

The sentence imposed by the district judge is AFFIRMED.