64 F.3d 665
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond C.E. BRUHA, Defendant-Appellant.
 No. 95-1295.
 United States Court of Appeals, Seventh Circuit.
 Argued July 6, 1995.
Decided Aug. 10, 1995.
 
 Before Cummings, Cudahy and Coffey, Circuit Judges.
 
 ORDER
 
 1
 In 1994 Raymond C.E. Bruha was charged in a forty-two count indictment with embezzling and converting for his own use $79,230.27 of Railroad Retirement benefits sent to his deceased father. See 18 U.S.C. Sec. 641. He pleaded guilty to one count of theft of government funds, and was sentenced to five months of imprisonment to be followed by two years of supervised release. Additionally, he was to serve the first five months of the two-year supervised release term in home confinement. Bruha challenges his sentence on appeal, alleging that the district court erred in increasing his offense level by two points for "more than minimal planning." See U.S.S.G. Sec. 2B1.1(b)(5)(A). We affirm.
 
 I. Background
 
 2
 Defendant Raymond Bruha's father, George R. Bruha, was eligible to receive annuity payments pursuant to the Railroad Retirement Act, and did receive such benefits since July 1, 1976. The annuity payments were directly deposited on a monthly basis into George Bruha's bank account at the First National Bank of Antioch, which George Bruha held jointly with his son, defendant Raymond Bruha, and daughter since September 1, 1984. George Bruha died on April 11, 1987, but the defendant failed to notify the Railroad Retirement Board of the death. Unaware of George Bruha's death, the Railroad Retirement Board continued to deposit funds, totaling $79,230.27 in 69 payments, to the First National account until January 1993. Over the course of the five and one-half years following George Bruha's death, Raymond Bruha withdrew all of the funds deposited by the Railroad Retirement Board by writing checks against the account and authorizing funds to be transferred from the account to his other accounts at the same bank for loan payments.
 
 
 3
 In 1994, a federal grand jury charged Bruha with embezzling and knowingly converting the Railroad Retirement benefits intended for his father. Bruha pleaded guilty to count 42 of the indictment, which charged that he knowingly converted to his own use $ 1277.24 in Railroad Retirement annuity funds paid to his deceased father in January 1993. Bruha also admitted in the plea agreement, for purposes of computing his sentence, the relevant conduct of embezzling funds from 68 other payments, totalling $77,953.03. The parties' plea agreement stipulated that Bruha's base offense level would be 4 levels for the offense of conviction, see U.S.S.G. Sec. 2B1.1(a), plus 8 additional levels by reason of the more than $ 70,000 embezzled. See U.S.S.G. Sec. 2B1.1(b)(I). The district court increased Bruha's offense level by another 2 points for "more than minimal planning," finding that Bruha's conduct involved repetitive criminal acts and that "each transaction involved a plan, albeit a modest one, of bringing out of the checkbook, writing a check, for a sum that was not the property of the defendant...."
 
 II. Analysis
 
 4
 This court reviews a finding of "more than minimal planning" for clear error and will reverse only if we are left with "a definite and firm conviction that a mistake has been committed." United States v. Moore, 991 F.2d 409, 412 (7th Cir. 1993). See also United States v. Lennick, 917 F.2d 974, 979 (7th Cir. 1990); United States v. White, 903 F.2d 457, 465 (7th Cir. 1990). Application note 1(f) to Sec. 1B1.1 of the Sentencing Guidelines defines "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form." U.S.S.G. Sec. 1B1.1, comment. (n.1(f)). The enhancement is appropriate if the defendant takes significant affirmative steps to conceal the offense. Id. Also, "more than minimal planning" is deemed present "in any case involving repeated acts over a period of time unless it is clear that each instance was purely opportune." Id; see also United States v. Maciaga, 965 F.2d 404, 406 (7th Cir. 1992). A "purely opportune" act has been defined as "spur of the moment conduct, intended to take advantage of a sudden opportunity." United States v. Rust, 976 F.2d 55, 58 (1st Cir. 1992); see also United States v. Monaco, 23 F.3d 793, 799 (3d Cir. 1994); United States v. Ivery, 999 F.2d 1043, 1046 n.4 (6th Cir. 1993).
 
 
 5
 Bruha argues that his each and every repeated act of converting the funds deposited by the government was "purely opportune" because the funds were placed in the existing First National account at no request of his own, because he did not affirmatively conceal his father's death, and because he was merely using the funds available to him from the joint account. We disagree. While Bruha may not have made an express misrepresentation to the Railroad Retirement Board, he nevertheless made the conscious decision not to reveal his father's death, thus ensuring that funds would continually be deposited in the joint account to which he had access. Indeed, he took the affirmative steps of converting the funds for his own use, fully aware that he was not entitled to such government payments. Significantly, Bruha's criminal conduct extended over a long period of time; the funds converted by Bruha were deposited by the government on 69 separate occasions over the course of five and one half years. Cf. United States v. Doherty, 969 F.2d 425, 430 (7th Cir.), cert. denied, 113 S. Ct. 607 (1992) (district court committed clear error when it failed to consider whether defendant's drafting of forty overdraft checks during a one month period, few if any of which appear to have been purely opportune, qualifies for a "more than minimal planning" enhancement). Except for perhaps the first couple of payments, Bruha's acceptance and later conversion of the funds exceeding $70,000 could hardly be considered mere happenstance whereby Bruha simply took advantage of a sudden opportunity. Given the Sentencing Guideline's requirement that each instance of the repeated acts must be purely opportune to avoid the enhancement, see Maciaga, 965 F.2d at 407, the district court properly concluded that Bruha qualified for the "more than minimal planning" increase.
 
 
 6
 Bruha's case is factually similar to United States v. Callaway, 943 F.2d 29, (8th Cir. 1991), in which the defendant fraudulently failed to reveal an event affecting her continued right to receive government benefits, and converted them to a use not intended by the government. The defendant in Callaway was the representative payee of her infant granddaughter, who was receiving disability benefits from the Social Security Administration (SSA). After the granddaughter was removed to a foster home, the defendant did not inform the granddaughter's foster parent of the benefits nor did she notify the SSA of the event. For approximately two years, she continued to receive and cash the checks for her own use, and signed statements indicating that there were no changes in the number of people in her household. The Eighth Circuit affirmed the enhancement for "more than minimal planning," concluding that while the defendant's receipt of the checks may have been "purely opportune," the defendant's concealment of her granddaughter's absence and her use of the benefits were not and required repeated acts over a period of time, justifying the enhancement. Id. at 31. As in Callaway, Bruha also concealed the event that, if known, would have stopped the government's continued payment to the account he held jointly with his father. Like the defendant in Callaway, Bruha converted funds not belonging to him over a long period of time. Thus, Bruha's conduct cannot be considered "purely opportune."
 
 
 7
 Bruha cites United States v. Maciaga, 965 F.2d 404 (7th Cir. 1992), for the proposition that where a defendant does not take any unusual steps to conceal the offense, enhancement for "more than minimal planning" is inappropriate. Bruha's reliance on Maciaga is misplaced. Although in Maciaga, this court did reverse a finding of "more than minimal planning," the holding was based on more than the simplicity of the defendant's criminal conduct. The defendant in Maciaga was a bank security guard whose job involved deactivating the alarm to open the bank and opening the night deposit safe after at least two other employees have arrived. On one occasion, the defendant removed a deposit bag without waiting for anyone else to arrive and placed it in the trunk of his car. Two and a half months later, the defendant accidentally set-off the bank alarm while opening the bank. After two police officers responded to the alarm and were assured that nothing was wrong, the defendant seized the opportunity and removed two deposit bags. This court reversed the trial court's enhancement for "more than minimal planning" in part because there was no evidence of any advance planning in the defendant's efforts at concealment. However, this court also considered as crucial the fact that the defendant did not commit "repeated acts over a period of time" and the two instances of the defendant's criminal conduct were not interrelated. This court specifically noted that "more than minimal planning" has never been applied to cases involving fewer than three repeated acts. Id. Bruha's case clearly involved many repeated acts; in the more than five year period during which Bruha received 69 payments, Bruha wrote numerous checks against the account and authorized periodic transfers of funds out of the account. The district court's finding that Bruha's criminal conduct involved "more than minimal planning" is not clearly erroneous. Accordingly, we AFFIRM the sentence imposed by the district court.