**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sammie L. BRADFORD, Defendant–
Appellant.**

No. 94–2590.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 25, 1995.

Decided March 12, 1996.

Certiorari Denied April 29, 1996.

See 116 S.Ct. 1581.

Lawrence Beaumont (argued), Office of Atty. Gen., Urbana, IL, for U.S.

Robert A. Handelsman (argued), Chicago, IL, for Sammie L. Bradford.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Sammie L. Bradford was arrested for speeding in Decatur, Illinois; the police found a loaded firearm in his vehicle. Bradford was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and he entered a plea of not guilty. After the district court held a hearing and denied Bradford's motion to suppress, a jury trial was held; the jury found him guilty of the crime charged. The defendant appeals the denial of his motion to suppress, his conviction, and his sentence. We affirm.

## I. BACKGROUND

At the suppression hearing, Police Officer Daniel Hassinger testified that on September 9, 1993 he was on radar traffic enforcement duty in Decatur, Illinois and observed a vehicle pass him travelling at a speed of 50 miles per hour in a 30 mile zone. He pulled the vehicle over, advised the driver that he was stopping him for speeding, and directed him to produce his driver's license; the driver, the defendant Sammie Bradford, responded that he did not have the license with him. The officer asked for I.D., his full name and date of birth. Hassinger radioed the dispatcher and gave him Bradford's name and birthdate, to allow him to determine if the defendant was a licensed motor vehicle operator and if he was wanted for any crime. The dispatcher replied that Bradford did not have a valid driver's license.[1]

At this point, Officer Hassinger informed Bradford that he was under arrest for speeding and driving without a license and instructed the defendant to step out of his vehicle. The officer testified that Bradford appeared "very nervous" and he was fearful that the defendant "was going to run from me," and so he requested back up help. Be-

---

1. At the suppression hearing, Hassinger testified that after he had taken Bradford into custody, he was advised that the defendant did in fact have a valid driver's license under a May 23, 1961 date of birth. Bradford's real birthdate, and the one he gave the officer when stopped, is May 25, 1961. Defense counsel attempted to character- ize the state's computer as having the wrong information, but Hassinger stated that it was also possible that the defendant had applied for a driver's license using an incorrect date of birth. Bradford was not charged with operating a motor vehicle without a driver's license.

fore back-up assistance arrived, Hassinger attempted to cuff Bradford, but the defendant resisted arrest and fled from the scene. Officer Hassinger pursued Bradford and tackled him, causing the defendant to fall; at this time according to Hassinger, the defendant "struck" the officer and escaped. Hassinger once again chased Bradford on foot for approximately one block, but lost sight of him and returned to the arrest scene minutes later.

While Hassinger was pursuing Bradford, Officer Robert Whitten arrived at the scene to assist and observed that the engine of the defendant's car was running. He entered the vehicle to turn off the ignition, and noticed "a silver object laying on the floorboard just beneath the seat, which I recognized to be the handle of a gun." He removed the weapon from the car, examined it, withdrew the magazine, and returned the gun and the magazine in the vehicle where he had discovered them. Thereafter, the officers seized the weapon, inspected it for prints and found an imprint of Bradford's finger on the magazine.[2]

While still at the scene of the arrest, in the presence of Whitten, Officer Hassinger again called the dispatcher and requested information concerning the ownership of the vehicle Bradford was driving. He was informed that the car was registered to Ms. Rose Brown, whose address was in the immediate vicinity of where the defendant was stopped. Hassinger proceeded to Brown's home, where he was joined by officer Carl Coleman. The officers spoke briefly with Brown who confirmed that she had loaned her car to the defendant. The officers searched Brown's home with her permission, but Bradford was not on the premises.

After returning to the traffic stop scene, Officer Hassinger requested of Coleman that he drive back to Brown's residence, pick her up, and convey her to her vehicle. Upon Coleman's arrival at Brown's residence, he observed Bradford, the defendant, sitting in another car, a parked white Oldsmobile Delta. At this time, some thirty minutes after Bradford's initial arrest, Coleman took him into custody.

Bradford, who was on parole for an attempted murder (1986 conviction) at the time of the traffic stop and had previously been convicted of burglary and rape (convictions in 1983 and 1978, respectively), was charged with being a felon in possession of a firearm. Bradford filed a motion to suppress the evidence, asserting that the events that ensued after the officer was informed that Bradford was not a licensed driver were unlawful because Bradford did, in fact, have a valid license (the officer learned the license was valid only after Bradford had been taken into custody).[3] However, Bradford did not contest that his speeding arrest was improper.

The district court denied the motion to suppress, finding that the police officer's speeding arrest was proper, and that because Officer Hassinger reasonably believed the defendant did not have a valid driver's license, it was lawful for him to take Bradford into custody, according to proper police procedure. The court also determined that Officer Whitten discovered the gun in plain view on the floor, partially under the driver's seat, as he entered the car to turn off the ignition switch.

At trial, Bradford testified[4] that on September 3, 1993, he was arrested while driving a car that belonged to his friend Rosie Brown. He stated that he was taking the vehicle to a carwash for her and that when he opened the glove compartment to place some cassette tapes inside, he discovered a gun. Bradford asserted that he picked up the weapon and the clip, which was lying on top of the firearm, to ascertain if it was real. When he discovered that it was real, he panicked because he knew that as a convicted felon, he was prohibited by law from possess-

---

**2.** The gun was inventoried as a Jennings Arms .380 caliber semi-automatic pistol. At trial, the parties stipulated that this fingerprint belonged to the defendant.

**3.** On appeal, Bradford contends that the speeding arrest was improper, but drops his argument

about the driver's license. Thus, we will not discuss the facts surrounding his license in any further detail.

**4.** The defendant testified at trial, but not during the suppression hearing.

ing a firearm. At this time, he picked up the gun, inserted the clip, and put the weapon in his jacket pocket, and went to a telephone to call Brown. Bradford was unable to reach Brown, so he returned to the vehicle, placed the firearm under the driver's seat, and proceeded to drive to her home. During this journey, Bradford testified, he was pulled over for speeding.

On the night of Bradford's arrest, Rose Brown told Officers Hassinger and Whitten that she was unaware that there was a gun in her vehicle. At trial, however, Brown contradicted this previous statement and testified that she was aware of the firearm's presence and that she had obtained the pistol from a "friend" named Stan in late February or early March of 1993. She asserted that she had placed the gun in her car, and planned to take it to her mother's so that her eleven year old son would not have access to it in her house.[5]

During the government's rebuttal, Larry Shaw, a federally licensed firearms dealer, testified and identified the pistol found in Brown's car by its serial number as one he purchased from its manufacturer on July 1, 1993, contradicting Brown's testimony that "Stan" had given her the weapon in March, 1993. Shaw testified that several days after the July 1 purchase, he loaned the weapon to a friend of his to display it to a number of potential purchasers. Shaw stated that the firearm was stolen from his friend, while it was in his friend's possession.

The jury returned a verdict of guilty, finding that Bradford was a convicted felon in possession of a firearm on September 3, 1993. The trial judge accepted the jury's verdict and entered judgment finding Bradford guilty of violating of 18 U.S.C. § 922(g)(1). The defendant was sentenced as an armed career criminal pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(a), be-

cause of his three prior felony convictions (rape, burglary, and attempted murder). Accordingly, his offense level was 33. The defendant also had thirteen criminal history points, which resulted in a criminal history category of VI.[6]

The Probation Officer who conducted the Presentence Investigation Report ("PSR") "identified no factors that would warrant a departure from the guideline range," and the district court agreed with that assessment. The offense level of 33 combined with the criminal history category of VI yielded a sentence range of 235–293 months imprisonment. The sentencing judge ordered Bradford imprisoned for a term of 235 months, the lower end of the guideline range, and further ordered that it be followed by 3 years supervised release, and that the defendant pay a mandatory $50 special assessment.

## II. ISSUES

Bradford raises the following issues on appeal: (1) whether the district court committed clear error in denying his motion to suppress; (2) whether his conviction under 18 U.S.C. § 922(g)(1) (criminalizing the possession of a firearm by a felon) is unconstitutional because the government failed to prove that his possession of this particular weapon affected interstate commerce; (3) whether, as Bradford interprets the sentence imposed, the district judge erroneously concluded that he was without authority to depart downward from the guideline sentence range; and (4) whether his trial counsel was constitutionally ineffective for failing to request either a downward departure pursuant to U.S.S.G. § 4A1.3 (criminal history over-representing the likelihood that a defendant will commit future crimes), or a reduction in offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

---

5. When the government queried Brown about Stan's identity, she gave neither his last name, address, nor telephone number, much less did she offer or was she asked to provide his description.

6. Bradford's criminal history points were calculated as follows: three criminal points for each of his prior felony convictions, one for possession

of marijuana in 1985, two points because he was on parole for the attempted murder conviction at the time of his arrest for being a felon in possession of a firearm (U.S.S.G. § 4A1.1(d)), and one point due to the fact that he committed the offense at hand within two years of his release from jail on the attempted murder charge (U.S.S.G. § 4A1.1(e)).

## III. DISCUSSION

### A. MOTION TO SUPPRESS

■ Based upon one single question asked by defense counsel and answered by Officer Hassinger within 250 pages of transcript at the hearing, Bradford argues that the trial judge's denial of his motion to suppress was improper. The question and answer are as follows:

Q. And you determined, according to the radar you used, that it [the car] was travelling at the posted speed limit, is that correct?

A. Yes, sir.

(Emphasis added). Bradford contends that if he was driving "at" the speed limit, as Hassinger testified, it was improper for the police officer to stop him. Thus, Bradford maintains that the ensuing events after the illegal traffic stop as well as the evidence seized therefrom, were the fruits of an illegal search and seizure.

The denial of a motion to suppress evidence is reviewed deferentially. An appellate court will reverse only if the district court's decision was clearly erroneous. When the district court's decision rests on credibility determinations, this court has stated that "the trial judge's ... choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." In other words, "[w]e must accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable fact-finder could accept it."

*United States v. Eddy,* 8 F.3d 577, 580 (7th Cir.1993), cert. denied, — U.S. —, 114 S.Ct. 1663, 128 L.Ed.2d 379 (1994) (citations and quotations omitted).

■ Bradford, on appeal, in which he is represented by substituted counsel, argues for the first time that he was not speeding when Officer Hassinger stopped him and

therefore the arrest and subsequent search was illegal. Ordinarily, we would consider this issue waived on appeal because the defendant failed to raise it before the trial court, and we would confine our review to plain error only. *United States v. Brookins,* 52 F.3d 615, 623 (7th Cir.1995). However, "the government does not argue that the issue has been waived and therefore we shall not pursue the matter further." *United States v. Cichon,* 48 F.3d 269, 275 (7th Cir. 1995) (collecting cases), cert. denied, — U.S. —, 116 S.Ct. 908, 133 L.Ed.2d 840 (1996); see also *United States v. Stone,* 987 F.2d 469, 471 (7th Cir.1993) (stating that the "government waived the defense of waiver by failing to raise it on appeal").

■ In his appellate brief, the defendant concedes that if he was speeding, the officer would have been justified in stopping his car.[7] During the suppression hearing, Officer Hassinger, immediately after responding affirmatively to the question of whether Bradford was travelling "at" the speed limit, was asked by defense counsel "What did the radar unit say?" to which he responded "50 miles per hour." Bradford was operating his motor vehicle in a residential neighborhood in Decatur,[8] and in his motion to suppress he admitted that he was stopped for "exceeding the posted speed limit of 30 miles per hour," and that he was "ticketed for speeding." Indeed, in defense counsel's argument, he acknowledged that Hassinger arrested his client for "[s]peeding and not possessing his driver's license."

It is interesting to note that, even when Bradford testified at trial, he stated that as he drove to Brown's house, after discovering the firearm in her car, he was not paying attention to his speed for he was anxious to return the gun to Brown. Also, when questioning at the trial, Bradford's counsel asked: "you were stopped for speeding on the way home, is that correct?" Bradford responded "That's correct."

---

7. See *United States v. Fiala,* 929 F.2d 285, 287 (7th Cir.1991): "so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest [or stop] is constitutional." (Alteration in original, citation omitted).

8. We take judicial notice of the fact that in the residential areas of Decatur, Illinois, the speed limit is 30 miles per hour. Ill.Ann.Stat. Ch. 625, § 5/11–601.

■ Additionally, it is well established that evidence from trial (as opposed to evidence from the suppression hearing) can, on appeal, support the denial of a suppression motion. See *United States v. Longmire*, 761 F.2d 411, 418 (7th Cir.1985) ("evidence adduced only at trial may be used to sustain the denial of a motion to suppress." (citations omitted)). At trial Officer Hassinger unequivocally stated that while he was monitoring his radar, he "picked up an indication of a speeding vehicle northbound on North Edward Street," (the vehicle Bradford was driving), and that when he attempted to arrest Bradford, he advised him that "he was under arrest for speeding and also for not having his driver's license on him."

■ We rely on Hassinger's and the defendant's trial testimony which made clear that Bradford was pulled over because he was travelling 50 miles per hour in a residential, 30 miles per hour zone, in excess of the speed limit. Thus, we hold that the district court properly denied the motion to suppress because it was clear from the testimony and argument at the suppression hearing, as well as Hassinger's and Bradford's trial testimony that the defendant's stop was proper, as was his subsequent arrest for speeding.[9]

### B. CONSTITUTIONALITY OF 18 U.S.C. § 922(g)(1)

Bradford asserts that 18 U.S.C. § 922(g)(1), the statute under which he was convicted, was unconstitutional as applied to the case before us because the prosecution failed to produce any evidence that Bradford crossed state lines with the firearm, or that he used it to threaten or otherwise "substantially affect" interstate commerce. Before the trial began, Bradford agreed to the following stipulation: "the Jennings model Bryco 38, 380 caliber semi-automatic pistol, bear-

ing serial number 433893, was manufactured by Jennings Firearms, Jennings Firearms of Irvine, California, and, therefore, this firearm has previously travelled in and affected interstate commerce."

■ The Supreme Court in *Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977), reviewed 18 U.S.C. § 1202(a)(1), the predecessor statute of 18 U.S.C. § 922(g) (felon in possession of a firearm), and held that there was "no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce." (Emphasis added).

Despite his stipulation that the firearm had travelled interstate, the defendant argues that *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), implicitly overruled *Scarborough* and requires the government to prove that his possession of the gun affected interstate commerce, not merely that the firearm at one point travelled in interstate commerce.

*United States v. Lopez* held that the Gun-Free School Zones Act (criminalizing the possession of a firearm in a school zone) exceeded congressional authority under the Commerce Clause because it "neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce." —— U.S. at ——, 115 S.Ct. at 1626. In *United States v. Bell*, 70 F.3d 495, 498 (7th Cir.1995), we examined the very issue of "whether *Lopez*, casts doubt upon *Scarborough* ... and whether under the *Lopez* analysis, § 922(g)(1) exceeds congressional power under the Commerce Clause;" we held "18 U.S.C. § 922(g)(1), which makes it a federal offense for a felon to possess a firearm, to be immune from constitutional attack under *Lopez*." We reaffirmed this holding in *United*

---

9. We also wish to make clear that Hassinger's arrest of Bradford for driving without a valid license was proper, although defendant was a licensed driver (defendant was not in possession of his license, which was issued under an erroneous birthdate. See note 1, supra). When a police officer's "conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances." *Arizona v. Evans*, —— U.S. ——, ——–——, 115 S.Ct. 1185, 1191–92, 131 L.Ed.2d 34 (1995) (quotations omitted, alteration in original). This "good faith exception," *United States v. Leon*, 468 U.S. 897, 919–20, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984), applies to the case at hand for to the best of Hassinger's knowledge, Bradford was an unlicensed driver.

*States v. Lee,* 72 F.3d 55, 58 (7th Cir.1995), and take note of the fact that the Second, Eighth, Ninth, and Tenth Circuits have also held 18 U.S.C. § 922(g)(1) to be a valid exercise of Congress' commerce clause power, even in light of *Lopez. United States v. Sorrentino,* 72 F.3d 294, 296 (2nd Cir.1995); *United States v. Bolton,* 68 F.3d 396, 400 (10th Cir.1995), cert. denied, — U.S. —, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Shelton,* 66 F.3d 991, 992 (8th Cir.1995); *United States v. Collins,* 61 F.3d 1379, 1383 (9th Cir.), cert. denied, — U.S. —, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995).

■ We refuse to extend the *Lopez* holding to 18 U.S.C. § 922(g)(1) because we are convinced that the Congressional Act preventing felons from possessing firearms that had travelled in interstate commerce is a valid exercise of Congress' power under the Commerce Clause. Bradford stipulated that the firearm found in Brown's car had travelled in interstate commerce; his stipulation was fatal to his case, for even after *Lopez,* his concession renders a conviction under 18 U.S.C. § 922(g)(1) constitutional pursuant to the Commerce Clause.

## C.   U.S.S.G. § 4A1.3 DOWNWARD DEPARTURE

Bradford's next contention is that the trial judge erroneously concluded that he lacked the grounds to grant him a downward departure on his sentence based on the following remarks he made at sentencing:

The court is bound by the statute in this case. This is the minimum sentence that Congress has said I may and I must impose. I, in reading the presentence report, I was impressed with the fact that Mr. Bradford had not been in any trouble for approaching two years, that he seemed perhaps to have straightened out his life. And then to be arrested on a speeding charge and all of the other incidents that followed seemed, I don't know what they seemed, they bothered the court that this harsh a sentence should be imposed. He was not engaged in any active criminal conduct, as [defense counsel] observes. The weapon, the handgun was in the auto-

mobile with him. Perhaps this is an indication of the folly of the mandatory sentencing that Congress has imposed.

(Emphasis added).

■ Ordinarily, a district court's decision to refuse to depart from a sentence within the Guidelines range is an exercise of the court's discretion which is unreviewable by this court. *United States v. Abbott,* 30 F.3d 71, 73 (7th Cir.1994); *United States v. Poff,* 926 F.2d 588, 590 (7th Cir.1991), cert. denied, 502 U.S. 827, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). However, when the sentencing judge believes that he lacks statutory authority to depart from the Guidelines, we deem this to be a legal conclusion over which we have jurisdiction to review. *Poff,* 926 F.2d at 591.

■ Section 4A1.3 of the Sentencing Guidelines provides in relevant part:

If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.... There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes.

In *Abbott,* we stressed that this departure was available only when "a defendant's criminal history significantly over-represents the seriousness of his past conduct." 30 F.3d at 73 (emphasis in original).

It is interesting to note that Bradford fails to cite to, in his brief or during oral argument, the example set forth in the guidelines of when a § 4A1.3 departure is appropriate: "An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." The example makes clear that the Sentencing Commission considered a departure warranted only in those instances where defendants

had steered clear of crime for a substantial period of time and whose prior offenses were relatively minor in terms of violence or danger to the community.

Bradford, previously convicted of rape, burglary and attempted murder, is no paradigm of virtue. He was, in fact, on parole for attempted murder at the time he was arrested and charged with being a felon in possession of a loaded firearm. Thus, Bradford's criminal record (three violent felonies) is far more severe than the circumstances the guidelines consider warrant a downward departure under § 4A1.3 (two misdemeanors).

Furthermore, although the defendant was not formally charged with resisting arrest, it seems reasonable to assume that the court and the probation officer in all probability took into consideration his combative behavior at the traffic stop when determining whether he deserved a downward departure. Bradford resisted arrest twice, and fled from the scene, apparently because he was well aware of the fact that he would once again be confined when the gun was discovered. During his testimony, Bradford admitted that he was aware that it was illegal for him to be in possession of a firearm. Although Rose Brown testified that the gun belonged to her, her testimony verges on being perjurious (even though the government has apparently not seen fit to charge her) in light of the testimony of Larry Shaw, the gun dealer, who stated that he purchased the very same gun from the manufacturer some four months after Brown alleged that she received the gun from a mysterious person named "Stan."

An individual like Bradford with three prior felony convictions who resists arrest and flees from law enforcement, after resisting arrest, certainly is not a proper candidate for a downward departure pursuant to U.S.S.G. § 4A1.3. Bradford's criminal behavior in this instance clearly demonstrates his continuous felonious conduct and refusal to abide by the laws of society, and that he had failed to

reform his conduct since his last brush with the law.

When sentencing the defendant, the judge stated that "[t]he court accepts the presentence report. The court adopts paragraphs 1 through 72 of the presentence report as the court's findings in this matter." Paragraph 72 stated: "The probation officer has identified no factors that would warrant a departure from the guideline range." Indeed, in light of the fact that the defendant had previously been convicted of three felonies, was presently on parole at the time of his most recent arrest, and resisted arrest, we are of the opinion that the district judge acted within his discretion in determining that Bradford failed to qualify for a U.S.S.G. § 4A1.3 downward departure. Both the court and the probation officer examined the defendant's criminal history, and came to the same conclusion that there were no grounds for a downward departure based on the severity of his violent and criminal history, not on any ignorance of § 4A1.3 and its provisions. The trial judge's passing comment about the sentencing guidelines and this defendant, when reviewed in its proper context of the 263 page sentencing transcript, does not indicate an intent to depart downward from the guideline range. We see no reason to set aside the court's exercise of sound discretion.[10]

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Bradford's final assertion is that he received ineffective assistance of counsel: (1) his trial counsel failed to request a U.S.S.G. § 4A1.3 downward departure; and (2) failed to request a reduction in his offense level based on his acceptance of responsibility. He maintains that but for his counsel's errors, he would have received both the departure and the reduction, and thus, he was prejudiced by his trial attorney's perfor-

---

**10.** We wish to note that in the future, it might be helpful if district judges would refrain from crusading against the Sentencing Guidelines on the record. Although their criticism is worthy of

consideration, the proper forum is the United States Congress, not the trial transcript. Obviously, this particular issue would not be before

mance.[11]

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The defendant must establish "that his counsel's performance fell below 'an objective standard of reasonableness' based upon 'prevailing professional norms.'" *Boyles,* 57 F.3d at 550 (quoting *Strickland,* 466 U.S. at 687–91, 104 S.Ct. at 2064–66). When an appellate court is called upon to review "charges of deficient performance, we are cognizant of the strong presumption that counsel's performance 'falls within the wide range of reasonable professional judgment.'" *Id.*

■■■ To overcome this presumption, the defendant must "demonstrate that his trial counsel's performance was deficient and that his 'counsel's deficiencies prejudiced his defense.'" *Id.* at 551 (quotation omitted). In other words, Bradford must clearly demonstrate that his attorney's performance was constitutionally deficient and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strick-*

*land,* 466 U.S. at 694, 104 S.Ct. at 2068. "Trial tactics are not subject to question by a reviewing court in deciding an ineffective assistance claim." *Boyles,* 57 F.3d at 551; see also *United States v. Zarnes,* 33 F.3d 1454, 1473 (7th Cir.1994), cert. denied sub nom., *Bland v. United States,* —— U.S. ——, 115 S.Ct. 2286, 132 L.Ed.2d 288 (1995) ("This court will not second-guess trial tactics that are rationally-based").

■■■ We have previously discussed why Bradford was ineligible for the 4A1.3 downward departure, see, supra, III.C., and see no reason to repeat our discussion except to state that the defense counsel's failure to request the downward departure, in light of the defendant's serious violent criminal history, and the trial judge's expression of his intent to refrain from departing from the sentence range, was within the broad range of reasonable professional decisions and was a proper exercise of his professional judgment.

■■■ With respect to the acceptance of responsibility reduction, Bradford argues that it was unreasonable for his attorney not to have requested it because Bradford admitted at trial that he was in possession of the gun (although he testified the possession arose from circumstances beyond his control and he never intended to possess the firearm). His appellate counsel contends that Bradford believed that he was owning up to his culpability in the instant case by admitting his possession of the weapon at best, and speculates that he would have been granted the reduction had it been requested.

The comments to U.S.S.G. § 3E1.1 provide, in relevant part:

this court had the trial judge refrained from his comments.

11. Ordinarily, the issue of ineffective assistance of counsel is not appropriate for direct review because it is "best dealt with at the district court level brought through a motion for a new trial or through collateral relief available under 28 U.S.C. § 2255." *United States v. Boyles,* 57 F.3d 535, 550 (7th Cir.1995) (quotation omitted). "The reason for this preference is that the district court, unlike the appellate court, has had the opportunity to observe counsel's performance firsthand, and typically, there has been no

chance to develop and include in the record evidence relating to the ineffectiveness issues." *Id.* (quotation and citation omitted).

Nevertheless, "we have the discretion to resolve ineffective assistance claims without the benefit of the district court's views in circumstances where the record is 'sufficiently developed' to consider the issue, or where both parties ask us to resolve the matter, the question has been briefed and argued, [as it has in this case] and the entire trial record is before us or where the issue is sufficiently clear-cut." *Id.* (quotations omitted).

In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

(Emphasis added).

Unlike the situation described in the comment above, the issue Bradford contested at trial was related solely to his factual guilt, i.e., his intent to possess the weapon. Although he is challenging the constitutionality of 18 U.S.C. § 922(g) on appeal, he failed to raise any constitutional challenge to the statute either before or during the trial. It is only on appeal, with his substituted counsel, that he has now brought this claim before the court.

Furthermore, our cases have made clear that when a defendant denies his guilt, "put[s] the government to its burden of proof at trial," and is subsequently convicted, he is generally not eligible for a § 3E1.1 reduction because he refused to acknowledge his guilt in a timely fashion, as is required by the guidelines. *United States v. Salvador*, 18 F.3d 1380, 1382–83 (7th Cir.1994) (citing U.S.S.G. § 3E1.1, application note 1); see also, *United States v. Evans*, 27 F.3d 1219, 1233 (7th Cir.1994) (quotations omitted) ("A defendant accepts responsibility only when he 'fesses up' to his actual offense"). When the United States Attorney's office and the district court expend the vast amount of time and resources necessary to properly prepare for and hold a trial, the defendant will rarely be eligible for an acceptance of responsibility reduction, except in the "rare" circumstances such as those enumerated above where the defendant wishes to pursue issues not related to his factual guilt of the crime. Just two years ago, we examined a similar situation in *United States v. Sanchez*, 984 F.2d 769, 774 (7th Cir.1993). In *Sanchez*, the defendant

was tried for distributing cocaine (21 U.S.C. § 841(a)(1)) and possessing a firearm during a drug trafficking crime (18 U.S.C. § 924(c)(1)), and his trial attorney conceded during his closing argument that his client was guilty of the drug charge. *Id.* at 770–71. However, Sanchez still contested the weapons charge and the jury found him guilty of violating 18 U.S.C. § 924(c)(1). *Id.* at 771. On appeal, his new counsel claimed that "Sanchez could have received a reduction for acceptance of responsibility, if he had been properly advised by his trial counsel," *id.* at 774, although the opinion fails to specify how Sanchez believed that his trial counsel's advice could have resulted in the reduction. We can only assume that the defendant was arguing that his attorney should have advised him to plead guilty to the crimes with which he was charged. The sentencing court denied the reduction because the defendant refused to acknowledge his guilt on the weapons charge, and declined to identify his cocaine supplier. We concluded that Sanchez's trial counsel was constitutionally effective because "[t]aking these stands were personal decisions of the defendant and can not be blamed on his attorney's trial tactics." *Id.*

Counsel also attempts to persuade us that his client owned up to his involvement in the possession of this weapon, yet Bradford steadfastly maintained that the gun belonged to Brown and that he was unaware of its presence in the car. In light of the guilty verdict, the jury disbelieved his testimony, as well as that of Brown (who first told the police that she was unaware of any firearm in her vehicle, but then testified at trial that the gun belonged to her and was given her by an individual, "Stan"). If we held that Bradford could have qualified for an acceptance of responsibility reduction in offense level, the implication would be that we second-guessed the jury's finding that the defendant intended to possess the firearm in question beyond a reasonable doubt. We are loathe to do so for we have stated on countless occasions that "the credibility of witnesses is peculiarly within the province of the jury and our review of credibility is prohibited absent extraordinary circumstances." *United States v. Rose*, 12 F.3d 1414, 1421 (7th Cir.1994) (quotations omitted); see also *United States*

*v. Berchiolly,* 67 F.3d 634, 639 (7th Cir.1995) ("we very rarely disturb a jury's credibility determination unless it is irrational and unreasonable").

Furthermore, as the probation officer astutely pointed out in her PSR,

> According to police reports prepared by the Decatur Police Department, the defendant admitted knowing the firearm was in the vehicle to the arresting officer and later recanted the admission. U.S.S.G. § 3E1.1, comment. (n. 2), states that conviction by trial does not automatically preclude a defendant from consideration for the reduction. However, a determination that a defendant has accepted responsibility will be based primarily upon pretrial statements and conduct.

Although Bradford eventually admitted that he knew about the weapon's presence, he consistently maintained his innocence with regard to intent to possess the firearm, and caused the government to expend its resources in prosecuting him.

In light of Bradford's conduct before, during and after trial, during which time he continually denied his intent to possess the gun found in Brown's car, his trial attorney made a rationally-based tactical decision to forego requesting the court to grant his client a reduction in offense level for acceptance of responsibility. This strategic choice was reasonable under the circumstances, and not one that caused the defendant prejudice, for even had his counsel requested the reduction, in light of his refusal to admit his intent to possess the weapon, it is most unlikely that the reduction would have been granted. Similarly, counsel's choice to refrain from requesting a § 4A1.3 downward departure was a reasonable tactical decision.

AFFIRMED.