UNITED STATES of America,
Plaintiff–Appellee,

v.

Timothy Andrew LEWIS, Defendant–
Appellant.

No. 95–2336.

United States Court of Appeals,
Seventh Circuit.

Argued May 16, 1996.

Decided Nov. 6, 1996.

Pamela Pepper (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

James C. Schroeder, Daniel G. Hildebrand (argued), Mayer, Brown & Platt, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and ESCHBACH and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

A jury convicted Timothy Lewis on charges that, having previously been convicted of a felony, he possessed a firearm that had moved in interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1), that he used a firearm in connection with a drug offense, in violation of 18 U.S.C. § 924(c), and that he possessed in excess of five grams of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Applying the career offender provision of the Sentencing Guidelines (sec.4B1.1), the district court imposed concurrent prison terms of ten and twenty-two years on the felon-in-possession and narcotics charges and a consecutive term

of five years on the other firearm charge. Lewis contends that his conviction on the felon-in-possession charge must be reversed because the prosecution failed to establish a constitutionally adequate nexus between his possession of the firearm and interstate commerce. He contends that his convictions on the other two charges must also be reversed on the ground that the prosecution failed to establish a chain of custody sufficient for the jury to find that the substance found in Lewis' possession was the same substance introduced into evidence at trial and identified as crack cocaine. We affirm.

## I.

In the early morning hours of September 20, 1994, two Milwaukee police officers patrolling in a squad car began to tail Lewis as he was driving two friends home. By their account, Lewis made a series of turns, parked the car, got out, and began to walk across the street. Officer Roberto Caban testified that he parked behind Lewis' car, exited the squad car, and told Lewis to return to his own car. Lewis broke into a run, and Caban gave chase. Caban caught up to Lewis as he was trying to climb over a fence.

Lewis and Caban gave different accounts of what happened next. Lewis testified that he was shot in the back as he was trying to surmount the fence, causing him to fall to the ground. Officers then administered first aid, went through his pockets, and transported him to the hospital. According to Caban, however, Lewis either fell down or came down from the fence just as Caban caught up to him. Lewis, facing Caban, told Caban to "[g]et back, get back, I have a gun, don't make me shoot you," or words to that effect. Caban backed off, shined a flashlight at Lewis, and noticed a shiny object in Lewis' hands. Lewis again tried to scale the fence unsuccessfully. By that time, Caban had drawn his own revolver and was telling Lew-

is repeatedly to "drop the gun." Lewis did not comply, and as he started to turn toward Caban, Caban shot him ·in fear for his life.

Caban handcuffed Lewis and discovered a gun at his side. An electronic pager was also found in the alley nearby. Later, when Lewis' clothes were removed at the hospital, Detective Rosalee Vukovich and another officer retrieved a fired bullet and a wad of cash in excess of $750 from a rear pocket of Lewis' pants. In addition, while they were searching the pants, a large, clear plastic bag containing seventy-nine packets of a "white powdery substance" fell to the floor. That substance was analyzed and determined to be crack cocaine.

## II.

A. The Felon in Possession Charge: Connection to Interstate Commerce

Section 922(g)(1) of the criminal code prohibits a convicted felon from possessing a firearm "in or affecting commerce." In *Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977), which involved the statutory forerunner to section 922(g)(1), the Supreme Court concluded that the "in commerce or affecting commerce" element of that offense demanded no more "than the minimal nexus that the firearm have been, at some time, in interstate commerce."[1] Following *Scarborough*, we reached the same conclusion about 922(g)(1) itself in *United States v. Lowe*, 860 F.2d 1370, 1374 (7th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989), where we specifically noted that proof of a gun's manufacture outside of the state in which it was allegedly possessed is sufficient to support the factual finding that the firearm was "in or affecting commerce." *See also United States v. Hubbard*, 61 F.3d 1261, 1269 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1268, 134 L.Ed.2d 216 (1996). Here, of course, the parties stipu-

---

1. In fact, the Court affirmed the district court's refusal to give a jury instruction, proposed by the defendant, that stated:

In order for the defendant to be found guilty of the crime with which he is charged, it is incumbent upon the Government to demonstrate a nexus between the "possession" of the fire-

arms and interstate commerce.... It is not enough that the Government merely show that the firearms at some time had traveled in interstate commerce....

431 U.S. at 566, 97 S.Ct. at 1964–65. This, of course, is Lewis' contention here.

lated that the firearm found next to Lewis had been manufactured outside the state of Wisconsin and consequently had moved in interstate commerce prior to September 20, 1994, when Lewis was arrested. Lewis concedes that this would be enough to satisfy the "in or affecting commerce" requirement as articulated by *Scarborough*. Nonetheless, Lewis contends that the Supreme Court's recent decision in *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), demands that the government establish "a closer, more explicit connection to interstate commerce under § 922(g)(1) than was demonstrated in this case and approved in *Scarborough*." Lewis Br. 10.

In *Lopez*, the Supreme Court held the Gun–Free School Zones Act, 18 U.S.C. § 922(q), which made it unlawful for a person to possess a firearm while in a "school zone," to be an invalid exercise of congressional Commerce Clause power. The statute was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." —— U.S. at ——, 115 S.Ct. at 1631. At the same time, the statute lacked any "jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* Nor did the statute contain congressional findings to which the Court could look reflecting a congressional judgment that the possession of a gun in a school zone "substantially affected interstate commerce." *Id.* at ——, 115 S.Ct. at 1632.

In *United States v. Bell*, we were quick to distinguish the felon-in-possession statute from the statute the Court found defective in *Lopez*, and thus to reject the defendant's claim that he had pled guilty to violating an unconstitutional provision:

Section 922(g)(1) does not suffer from the same infirmities. It contains an explicit requirement that a nexus to interstate commerce be established. It makes it unlawful for a felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm...." Had Mr. Bell gone to trial, the government would have been required to

prove that the weapon he sold to the undercover agent had traveled in interstate commerce. In other words, to secure a conviction under § 922(g)(1) the government had to prove exactly what *Lopez* found missing under § 922(q)....

70 F.3d 495, 498 (7th Cir.1995); *see also United States v. Lee*, 72 F.3d 55, 58–59 (7th Cir.1995); *United States v. Bradford*, 78 F.3d 1216, 1222–23 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1581, 134 L.Ed.2d 678 (1996). *Accord United States v. Sorrentino*, 72 F.3d 294, 296–97 (2d Cir.1995); *United States v. Gateward*, 84 F.3d 670, 671–72 (3d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 268, 136 L.Ed.2d 192 (1996); *United States v. Rawls*, 85 F.3d 240, 242 (5th Cir.1996) (per curiam); *United States v. Turner*, 77 F.3d 887, 889 (6th Cir.1996); *United States v. Rankin*, 64 F.3d 338, 339 (8th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 116 S.Ct. 577, 133 L.Ed.2d 500 (1995); *United States v. Hanna*, 55 F.3d 1456, 1462 & n. 2 (9th Cir.1995); *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *see also United States v. Nguyen*, 88 F.3d 812, 820–21 (9th Cir.1996), *petition for cert. filed* (Oct. 7, 1996) (No. 966276); *United States v. Chesney*, 86 F.3d 564, 568–70 (6th Cir.1996); *United States v. Hernandez*, 85 F.3d 1023, 1030–31 (2d Cir. 1996); *United States v. Spires*, 79 F.3d 464, 466 (5th Cir.1996) (plain error review); *United States v. Collins*, 61 F.3d 1379, 1383–84 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995). As the Sixth Circuit remarked in *Turner*, "[r]equiring the government in each case to prove that a felon has possessed a firearm 'in or affecting commerce' ensures that the firearm possession in question affects interstate commerce and saves § 922(g) from the jurisdictional defect that doomed § 922(q)." 77 F.3d at 889. *Contra Chesney*, 86 F.3d at 578 (Batchelder, J., concurring).

Our court and others have also rejected the argument that *Lopez* requires the government to establish a more substantial connection to interstate commerce than proof of a prior movement of the firearm across state lines (often, as here, years before the defen-

dant was discovered in possession of it) supplies. In *Bell*, we concluded that *Lopez* cast no doubt upon the continued validity of either *Scarborough* or *Lowe*, and thus we reaffirmed the view that "the mere movement of a weapon, at some time, across state lines satisfied the commerce element of § 922(g)(1)." 70 F.3d at 498; *see also Bradford*, 78 F.3d at 1222–23. *Accord United States v. Farnsworth*, 92 F.3d 1001, 1006–07 (10th Cir.1996) (de minimis effect of defendant's own actions on interstate commerce does not invalidate conviction); *Nguyen*, 88 F.3d at 821; *United States v. McAllister*, 77 F.3d 387, 390 (11th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 262, 136 L.Ed.2d 187 (1996); *United States v. Bates*, 77 F.3d 1101, 1104 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 215, 136 L.Ed.2d 149 (1996); *United States v. Shelton*, 66 F.3d 991, 992–93 (8th Cir.1995) (per curiam), *cert. denied*, —— U.S. ——, 116 S.Ct. 1364, 134 L.Ed.2d 530 (1996); *Rawls*, 85 F.3d at 242–43; *Rankin*, 64 F.3d at 339; *Hanna*, 55 F.3d at 1462.

The Supreme Court's own examination of felon-in-possession provisions suggests that our conclusion in *Bell* was correct. When the Supreme Court first construed the predecessor of section 922(g)(1) in *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), it interpreted the statute not to reach the mere possession of firearms. Such a construction would have given the statute an extremely broad sweep, "mark[ing] a major inroad into a domain traditionally left to the States...." *Id.* at 338, 92 S.Ct. at 518; *see id.* at 350, 92 S.Ct. at 524 ("[a]bsent proof of some interstate commerce nexus in each case, § 1202 dramatically intrudes upon traditional state criminal jurisdiction"). By interpreting the statute to require the firearm to have moved in interstate commerce, the Court avoided having to assess the constitutionality of a significantly altered "federal-state balance." *Id.* at 339 & n. 4, 92 S.Ct. at 518 & n. 4; *id.* at 351, 92 S.Ct. at 524; *see Lopez*, —— U.S. at ——, 115 S.Ct. at 1631. And the Court's evident belief that a minimal nexus to interstate commerce (*see Bass*, 404 U.S. at 350–51, 92 S.Ct. at 524) was, indeed, sufficient to avoid this inquiry altogether, suggests that no more is necessary to satisfy the Commerce Clause. *See Chesney*, 86 F.3d

at 571 ("When the Court construes a statute to avoid a constitutional question, the Court's construction must itself be constitutional.") (citing *Gomez v. United States*, 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989)); *see also Gateward*, 84 F.3d at 671. Indeed, *Lopez*'s own approving citation to *Bass* and the minimal showing of a connection to interstate commerce *Bass* found sufficient to avoid a constitutional question (*see* —— U.S. at ——, 115 S.Ct. at 1631) confirms that *Lopez* changed nothing in that regard. *See Chesney*, 86 F.3d at 569; *Gateward*, 84 F.3d at 672; *Turner*, 77 F.3d at 889; *but see also Chesney*, 86 F.3d at 581–82 (Batchelder, J., concurring).

It may be true that Lewis' individual possession of a gun did not have *much* of an impact upon interstate commerce. All we really know here is that the firearm was manufactured in Hungary and was too old to trace further; it may have been years, or even decades, then, since the gun had moved across state lines. Yet it would be difficult, if not impossible, to attempt to draw practical distinctions between the possession of firearms which have moved in interstate commerce recently, and the possession of firearms whose travels are distant in time. A single journey across state lines, however remote from the defendant's possession, is enough to establish the constitutionally minimal tie of a given weapon to interstate commerce, and to bring the defendant's possession of the gun within a framework of regulation whose connection to interstate commerce is more apparent.

Prohibiting possession by felons limits the market for firearms, and discourages shipping, transporting, and receiving firearms in or from interstate commerce. Regulation of interstate gun trafficking, which is clearly commercial activity, is thus facilitated by regulation of possession in or affecting commerce. This satisfies both the spirit and language of *Lopez*, and can "be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Lopez*, —— U.S. at ——, 115 S.Ct. at 1631.

*Chesney,* 86 F.3d at 571–72; *see also McAllister,* 77 F.3d at 390 ("When viewed in the aggregate, a law prohibiting the possession of a gun by a felon stems the flow of guns in interstate commerce to criminals.").

■ We therefore reject Lewis' challenge to his felon-in-possession conviction. The stipulation that the handgun found in Lewis' possession had been manufactured outside of Wisconsin was sufficient to establish that the gun had, at some previous time, moved in interstate commerce, and this in turn was sufficient to demonstrate the nexus to interstate commerce required by the Commerce Clause.

**B. Sufficiency of the Narcotics–Related Evidence**

Lewis maintains that the government's evidence was not sufficient to establish that he possessed crack cocaine (and, consequently, that he used a gun in connection with a narcotics trafficking offense). He focuses on certain gaps and inconsistencies in the testimony concerning the cocaine and what happened to it after it was found in his jacket at the hospital. He wonders, for example, why the bag of cocaine was not discovered during previous pat-downs at the scene of his arrest. He points out that although crack cocaine is a hardened form of the drug, Officer Vukovich described what she took into her possession at the hospital as a "white, powdery substance." He notes further that the packaging of the cocaine as it was found on his person was different from the packaging Vukovich described at trial.

■ Lewis did not seek a judgment of acquittal based on this purported insufficiency of the evidence at the close of the government's case, at the close of all evidence, or within seven days after the discharge of the jury, as prescribed by FED. R. CRIM. P. 29. Consequently, he has waived the sufficiency argument for purposes of appeal unless a miscarriage of justice will otherwise result. *E.g., United States v. Copus,* 93 F.3d 269, 271 (7th Cir.1996). This case does not present that possibility. Certainly the questions Lewis has raised would have been appropriate matters for cross-examination and closing argument below, but they do not raise seri-ous questions as to the jury's verdict. Detective Vukovich outlined the chain of custody from seizure of the cocaine at the hospital, to presentation of the substance to an unnamed detective for testing, to sealing of the cocaine and the original packing materials after testing. Tr. 125–29. She described what she observed at the hospital as a powder*y* substance, not powder. Tr. 125. Any differences between the packaging of the cocaine as found in Lewis' pants and as presented at trial are likely explained by the testing and sequestration processes. In any event, there is nothing before us affirmatively suggesting that the evidence was either tampered with or fabricated.

### III.

For the reasons we have articulated, we AFFIRM the judgment of conviction.