NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued February 27, 2007
Decided March 1, 2007

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2460

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 05 CR 1024 |
| NICOLAS TOSTADO-SIANEZ, *Defendant-Appellant*. | James B. Zagel, *Judge*. |

**O R D E R**

Nicolas Tostado-Sianez pleaded guilty to being in the United States without permission after his removal to Mexico, based on multiple aggravated felony convictions. See 8 U.S.C. §§ 1326(a), (b)(2). The district court calculated a guidelines range of 70 to 87 months' imprisonment and sentenced Tostado to 70 months. His principal argument on appeal is that his personal situation is so unusual and so compelling that the court should have selected a much more lenient sentence – possibly even one as low as "time served." He also argues that his criminal history was overstated and that the absence of a "fast-track" program in the Northern District of Illinois required a reduction in his sentence. While we acknowledge that Tostado's situation is indeed out of the ordinary and sympathetic, and a lower sentence may not have been unreasonable, that is not the question we must answer here. Instead, we must evaluate the sentence the district court chose, recognizing the considerable

discretion the court has in the sentencing process. From that perspective, we cannot say that the district court abused its discretion or that the sentence was an unreasonable one. We therefore affirm.

**I**

Tostado's current prosecution began with his arrest on October 29, 2005, by the Elmwood Park, Illinois, police for driving on a suspended license and under the influence of alcohol. Upon his release, he was taken into custody by Immigration and Customs Enforcement (ICE). He was then charged with being in the United States without permission after his removal to Mexico on March 31, 2000, following his conviction in Illinois state court and service in state prison for attempted murder, aggravated battery, and armed violence. See 8 U.S.C. §§ 1326(a). Tostado entered a blind guilty plea to the one-count indictment for illegal re-entry.

During his presentence interview, Tostado stated that he returned to Chicago from Mexico in June 2005 in order to attend the high school graduation of his daughter Justina. Justina had been suffering from depression; she had been abusing alcohol and had even attempted suicide. Her mother, Maurine Watco, had called Tostado in Mexico and asked him to come up and help. Deeply concerned, he did so, despite the fact that by this time he had a wife and two children in Mexico and despite the fact that he did not have the permission of the U.S. Attorney General to re-enter. Tostado remained in Chicago for a short period after the graduation in order to provide moral support following Justina's suicide attempt. His arrest at the end of October, approximately four months after his re-entry, dashed that hope. Sadly, his efforts to save Justina also failed. While he was incarcerated, she was killed in an auto accident in January 2006. Her blood alcohol content was .21; Tostado believes that she committed suicide.

At sentencing, the court acknowledged the fact that Tostado had "suffered significant trauma" from the loss of his father at a very early age and, more recently, the death of his daughter Justina, and that he entered the country only to "come to the aid" of his daughter. The court noted that Tostado "did pretty well in prison" and was "a very different man" from the one he was when he committed the aggravated felonies. The court also found, however, that Tostado engaged in a "spectacular display of poor judgment" by getting behind the wheel of a car without a license and under the influence of alcohol, particularly when he was in the country illegally and was putting himself in a position to be arrested. As the court rightly pointed out, Tostado's behavior both violated the law and impaired the very purpose for which he returned to the United States—to help his daughter—and the court questioned whether it could trust Tostado not to engage again in such "impulsive action." With all of this in mind, the court sentenced Tostado to 70 months in prison. In imposing a sentence at the very bottom of the guidelines range, the court stated that it believed the sentence took "due account" of the "extraordinary circumstances" in which Tostado found himself.

## II

On appeal, Tostado first asserts that the district court erred by declining to reduce his criminal history category from V to IV. Tostado argues that his criminal history category substantially over-represents the seriousness of his criminal past or the likelihood he will commit further crimes, and thus that it was unreasonable for the district court not to grant a one-level reduction pursuant to U.S.S.G. § 4A1.3(b). He concedes that his earlier offenses were serious (as indeed they were), but he urges that the reduction is nonetheless merited because he committed them 16 to 17 years before his current offense, within a short span of time, and when he was only 19 years old—a time when he was abusing drugs and alcohol, and was struggling with several traumatic childhood incidents, including the murder of his father.

The sentencing guidelines as written give district courts the discretion to reduce a defendant's criminal history points if the criminal history category into which the defendant otherwise falls "substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). Such a reduction may be appropriate if the defendant committed "two minor misdemeanor convictions close to ten years prior to the instant offense and [there is] no other evidence of prior criminal behavior in the intervening period." *Id.*, § 4A1.3 cmt. n.3; see also *United States v. Bradford*, 78 F.3d 1216, 1223–24 (7th Cir. 1996). Manipulating criminal history categories in order to arrive at a different guidelines range, however, may be a needless complication ever since the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005). As long as the initial category is properly calculated, so that the sentencing court may take appropriate guidance from the resulting sentencing range, the court must in any event consider the factors set forth in 18 U.S.C. § 3553 and impose a sentence that is reasonable. *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006). A sentence that falls within the guidelines range is presumed reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 607–08 (7th Cir. 2005). *Cf. United States v. Rita*, 127 S.Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5754) (granting writ of certiorari to decide whether according a presumption of reasonableness to within-guidelines sentences is consistent with *Booker*).

Because Tostado's earlier offenses were violent felonies, it is not at all clear that he would have qualified for a reduction in his criminal history even under the old regime. For his part in several gang-related shootings, he was convicted on multiple counts of attempted murder, aggravated battery, and armed violence. These offenses are far more serious than others for which this court has upheld a district court's refusal to grant a reduction under § 4A1.3(b)(1). See *United States v. Wurzinger*, 467 F.3d 649, 654–55 (7th Cir. 2006) (affirming denial of reduction for defendant whose prior offenses were carrying a switchblade knife and committing instant offense while on probation); *Bradford*, 78 F.3d at 1223–24 (pre-*Booker* case affirming denial of reduction for defendant previously convicted of three violent felonies). Moreover, the remoteness in

time of Tostado's prior convictions is offset by the fact that he was incarcerated for ten years from 1990 to 2000, which necessarily created a gap between offenses. See *United States v. Woodard*, 408 F.3d 396, 398 (7th Cir. 2005).

Next, Tostado argues that the district court erred by declining to impose a below-guidelines sentence based on extraordinary family circumstances and "cultural assimilation." He contends that it was unreasonable for the court not to reduce his sentence under U.S.S.G. § 5K2.0 to account for the fact that he had lived in the United States nearly all his life, that his daughter lived in the United States, and that he entered the country only to help her struggle against alcohol abuse and depression. Other than asserting generally that he has lived most of his life in the United States, Tostado does not fully develop his "cultural assimilation" argument. We note as well that it is in some tension with his argument that his entire family is now in Mexico, and that he wants nothing more than to return to Mexico as soon as possible, never to return again to the United States. Once again, even if the court here might have found it useful to consider this ground for departure explicitly, it was well within its discretion to decide that no such adjustment was warranted for Tostado.

Recognizing that this court has rejected arguments for sentencing adjustments based on the existence or non-existence of fast-track programs, Tostado urges us to revisit those decisions. See, *e.g., United States v. Rodriguez-Rodriguez,* 453 F.3d 458, 462–63 (7th Cir. 2006); *United States v. Martinez-Martinez*, 442 F.3d 539, 542–43 (7th Cir. 2006). We decline to do so; Tostado has done what he needed to do to preserve this issue for further review.

In the end, the argument that gives us most pause is the one based on his family circumstances. We are troubled by the government's inability to tell us at oral argument what procedures a person in Tostado's position was supposed to follow, when a family emergency in the United States might well have persuaded the Attorney General to grant permission for a limited re-entry. We are also troubled by the lack of any specific finding on the question whether Tostado is likely ever to return to the United States, now that his daughter has passed away and the rest of his family is in Mexico. That said, we can see plainly from the sentencing record that the district court took fully into account the fact that Tostado's daughter lived in the United States and that he entered the country only to help her. Despite these mitigating factors, the court nonetheless concluded that Tostado's serious criminal past and his poor judgment in driving under the influence warranted a sentence within the guidelines range, albeit at the bottom of that range. There is no basis in the record for concluding that the sentence the court chose was an unreasonable one.

For these reasons, we AFFIRM the judgment of the district court.